[Criminal No. 866.   Filed October 31, 1938.]

[83 Pac. (2d) 994.]

# BILL WALKER, Appellant, v. STATE OF ARIZONA, Respondent.

Miss S. V. Ross and Mr. Marshall W. Haislip, for Appellant.

Mr. Joe Conway, Attorney General of Arizona, and Mr. W. E. Polley, his Assistant, for Respondent.

LOCKWOOD, J.—Bill Walker, hereinafter called defendant, was informed against by the county attorney of Maricopa county for the crime of murder in the first degree. He was duly tried and found guilty of the crime of murder in the second degree, and has prosecuted this appeal.

The only material question raised by the appeal is whether the trial court erred in refusing to instruct the jury on the issue of self-defense. It is the law in most jurisdictions that if there is evidence appearing in the record which would raise a reasonable doubt as to whether the homicide with which a defendant is charged was committed in self-defense, it is the duty of the trial court to instruct upon that issue, whether the evidence raising it is brought out by the state or by the defense, and a failure to so instruct is error. *Graham* v. *State,* 98 Ohio St. 77, 120 N. E. 232, 18 A. L. R. 1272; Underhill, Crim. Ev., sec. 51, p. 50. We think this is the law in Arizona also. On the other hand, if the evidence in the case is insufficient to raise a reasonable doubt as to whether a defendant accused of a homicide did act in self-defense, any instruction on that issue is properly refused. *Hicklin* v. *Territory,* 9 Ariz. 184, 80 Pac. 340; *Judd* v. *State,* 41 Ariz. 176, 16 Pac. (2d) 720. It, therefore, becomes necessary for us first to determine the essential elements of self-defense, and then to examine the record to ascertain whether the evidence is sufficient to raise a reasonable doubt as to whether such necessary elements actually existed at the time of the homicide herein.

Section 4590, Revised Code 1928, so far as material to this case defines self-defense as follows:

"*Justifiable homicide; bare fear as justification.* Homicide is also justifiable when committed by any person: 1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or . . . 3. when committed in the lawful defense of the person, or of a wife or husband, parent, child, master, mistress, or servant, of such person, when there is reasonable ground to apprehend a design to commit a felony, or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, or the person in whose behalf the defense was made, if he was the assailant or engaged in mutual combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed. . . .

"A bare fear of the commission of any of the offenses mentioned in subdivisions two and three hereof, is not sufficient to justify a homicide. But the circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone."

█ It appears, therefore, in order to sustain a plea of self-defense, (a) the circumstances must be such as to excite the fears of a reasonable person of great bodily injury or death to himself or some other person, (b) the party committing the homicide must have acted under the influence of such fears alone, (c) in resisting an assault the person claiming self-defense must not use any more force than reasonably appears under the circumstances to be necessary to repel the assailant, and (d) if the slayer or the person he is attempting to defend is the assailant or engaged in a mutual combat, the one in whose defense the homicide was committed must really and in good faith have endeavored to decline any further struggle before the killing. Unless each and all of these elements appear in the evidence in an appropriate case, a plea of self-

defense is not justified, and it is not error for the court to refuse to instruct upon that issue.

The undisputed evidence shows that Roy and Jim Fansler at the time of the homicide were brothers who owned and operated a cotton farm in the vicinity of Buckeye. Defendant was their foreman, and they also employed a number of cotton pickers and other workmen upon the premises. Curtis Eslinger, the deceased, for some time prior and up to the night of the homicide had been one of these employees. The Fanslers owned and operated a small commissary and kitchen in connection with their farm, and about 8 o'clock in the evening of January 3, 1938, a group of these employees were in the commissary tent gambling. Among those present from time to time were defendant, one Jack Fox and his seventeen year old son Eugene, Lucien Hawkins, Floyd Patterson, the deceased, and the two Fanslers, with perhaps one or two others. There had been some previous difficulty between deceased and the Fanslers, and more or less bitter language had passed. Finally Roy Fansler and deceased, who were at the time just outside of the tent, became engaged in an argument, when Jack Fox walked up to them. A few words were said, whereupon Fansler struck Fox with a flashlight, and the two men clinched and fell to the ground where they scuffled a few moments. So far there is no dispute as to what had actually happened.

The testimony of the defendant is that he then started towards the fight, and deceased caught him about the body. He turned and hit the latter, and there followed immediately a scuffle in which an indefinite number were engaged. Someone, whom he suspected to be a man named Callahan, a brother-in-law of Eslinger, attempted to strike the struggling group with a pistol. Defendant took the pistol from its pos-

sessor, and thereafter some unknown person struck him on the head and he knew nothing of what happened from that time on until several hours later. Up to the time that defendant claimed he saw the gun in the hand of this other person, there is no evidence that any shot had been fired or that any dangerous weapon was in the possession of any of the other participants in the brawl. The testimony of four eye-witnesses of, and participants in, the difficulty also appears in the record. They agree with defendant that Roy Fansler commenced the fight with Jack Fox. Three of them state that while Fansler and Fox were fighting upon the ground, defendant appeared with a drawn pistol in his hand and started towards the fight, whereupon Eslinger caught him about the body. Defendant immediately beat Eslinger's hands loose with the pistol and clinched with him and they fell upon the ground, defendant underneath. Eslinger arose and attempted to get away from defendant, but the latter held him by the legs with one hand and fired two shots at him, and as a result of such shots he died in a very few moments. The fourth witness, Jack Fox, did not see the pistol until after the shots were fired, when he saw it in defendant's hand.

This is the material evidence stated in as strong a manner in favor of defendant's theory of self-defense as is reasonably possible. Is it such as to cause a reasonable man to think that defendant honestly believed that it was necessary to shoot deceased in order to protect himself from death or great bodily injury at the hands of deceased, and that he acted under the influence of such fears alone? He cannot claim he acted in defense of Fansler for by all accounts the latter started the fight without legal provocation and had made no efforts to abandon it. Obviously the defendant could not, at the very instant he fired the fatal

shots, have had a belief that it was necessary to kill Eslinger in self-defense, for he states himself that he has no recollection of ever shooting at anybody, and it is urged by respondent that this conclusively negatives any possibility of self-defense. In support of this he cites the case of *Young* v. *State,* 48 Okl. Cr. Rep. 443, 292 Pac. 867. Therein the defendant had gone to a dance, became intoxicated and stabbed another person fatally. He was convicted and contended on appeal that the court improperly refused to instruct on self-defense. The appellate court said:

" . . . It is well settled that it is the duty of the trial court to instruct on the issue of self-defense when there is evidence reasonably tending to raise such issue. But is there any issue of self-defense in this case? The testimony of defendant is that he was so intoxicated that his act could not be murder. His testimony shows no belief of any danger to himself or that he acted in defense of his person at the time of the fatal difficulty. By his testimony, he elected to defend on the ground that he was so intoxicated he could not form the necessary intent to make the act of killing murder, and thus reduce it to manslaughter. Self-defense is not a possible legitimate deduction to be drawn from his evidence. . . . "

We think, however, that even though at the moment of a homicide, according to defendant's own statement it was impossible for him to have any conscious belief as to danger to himself or of the necessity of killing to preserve his own life, or intent to act thereon, there may be circumstances which would justify a claim of self-defense, even though at the actual instant of killing a defendant is not conscious of his actions. It is a well known fact that men at times act as a result of automatic reflexes initiated by some previous situation or belief, although they are utterly unconscious of the particular act at the instant of action, and have no memory of it later. Some of the better

known instances of this kind are those of boxers, who continue for several rounds of a bout, acting in what is apparently a perfectly logical and normal manner, although they have at the time and later on no consciousness of their motions. More than one foot ball player has continued to play well for some time under the influence of his subconscious mind, although his higher consciousness at the time or later on has no knowledge of his actions. It is possible that a man may be hit on the head, as defendant testifies he was, and continue to have the normal reactions to a situation existing before he was hit, without having any knowledge of his conduct or recollection thereof when his mind regains the normal. We think, therefore, that defendant may claim the benefit of the situation as it reasonably appeared to him up to the time when, as he said, he became unconscious, and if this was such as to justify a reasonable man in killing deceased in self-defense, the mere fact that defendant was not conscious of his conduct from that time on and had no recollection of it thereafter, will not necessarily preclude him from claiming that he acted in self-defense.

With this statement of the law, does the evidence tend to show the elements necessary to sustain self-defense? After a careful consideration, we think it does not. According to defendant's own testimony, he was attempting to interfere in a struggle between two other parties when he was caught around the body by deceased. He does not contend that at this time any of those present showed any signs of having any dangerous weapons in their possession, or that he then feared any injury from deceased, or indeed, from any other person, or that he considered it necessary to protect himself therefrom by taking the life of another. He was merely engaged in a scuffle with the deceased, which would be characterized at most as a simple

assault. During this scuffle, in some manner a pistol appeared upon the scene. All of the witnesses, except defendant, say it was in the possession of defendant from the beginning of the scuffle to the end. He says it was not, but that he gained its possession from some unknown party whom he supposed to be the brother-in-law of deceased. *But he does not say that at the time he seized the pistol, or indeed at any time he had any fear of serious injury by any person.* He was, to his knowledge, in possession of the only weapon which had appeared on the scene of action. There was nothing to indicate any other weapon was in the possession of any other person. Under these circumstances, we think there was nothing to justify any reasonable man in believing that defendant was in such danger just before he became unconscious that it would justify him in taking a human life, nor indeed that he ever had any such a fear, much less that he was acting on such fear alone. And, as we have said, even on the most liberal theory of the law, if up to the time he became unconscious the situation did not justify him in killing deceased in necessary self-defense, nothing that arose thereafter could have produced such justification. If the evidence did not justify an instruction on self-defense, it was not error for the court to refuse to give it.

The judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.