[Criminal No. 940. Filed April 19, 1944.]

[148 Pac. (2d) 357.]

THE STATE OF ARIZONA, Appellee, v. MANUEL LOPEZ ROMERO, Appellant.

Mr. Joe Conway, Attorney General, Mr. Thomas J. Croaff, Assistant Attorney General, Mr. James A. Walsh, County Attorney and Mr. Fred J. Hyder, Deputy County Attorney, for Appellee.

Mr. V. L. Hash, for Appellant.

STANFORD, J.—Defendant appellant was charged in the Superior Court of Maricopa County at Phoenix, Arizona, with the crime of robbery in the first count and for aggravated assault in the second count, and although counsel for the defense had made a motion before the Superior Court to dismiss the first count, the County Attorney withdrew count I, and the case comes before this court on count II of an information which reads as follows:

"For a further and separate cause of action, being a different offense from, but connected in its commission with the charge set forth in Count I hereof, the said Manuel Lopez Romero is accused by the County Attorney of Maricopa County, Arizona, by this information of the crime of aggravated assault, a felony, committed as follows:

"The said Manuel Lopez Romero on or about the 21st day of September, 1942, at and in the County of Maricopa, Arizona, did then and there, with a premeditated design, make an unlawful assault upon Thomas Latham and Eugene Holcomb, by the use of means calculated to produce great bodily injury, to-wit; by striking, beating and kicking the said Thomas Latham and Eugene Holcomb, as aforesaid upon the head, body and person of them, the said Thomas Latham and Eugene Holcomb; . . . "

The evidence shows that Thomas Latham and Eugene Holcomb, who were cousins, and who had

been at a skating rink at Riverside Park south of the City of Phoenix, were, between ten and eleven o'clock in the night, returning to Phoenix when they met a group of Spanish-American boys. There were about six in number of the Mexicans. One of the Mexican boys asked Latham for a match. Following that request a fight ensued, the first strike having been made by one of the group who struck Holcomb and the defendant then struck Latham. A struggle ensued lasting five or six minutes. One of the witnesses in the case testified that when Latham was upon the ground he saw the appellant herein kick him with his feet. It was also testified that the group of Mexicans aided in churning Latham on the cement, one having him by the hair of his head and others by the feet.

Our statute defines aggravated assault as follows:

"43-603. *Aggravated assault and battery defined—Punishment.*—An assault or battery committed under any of the following circumstances, is aggravated: When the person committing the offense goes into a private home and is there guilty of assault or battery; when committed by a person of robust health or strength upon one who is decrepit; when committed by an adult male upon the person of a female or child, or by an adult female upon the person of a child; when the instrument or means used is such as to inflict disgrace upon the person assaulted, as an assault or battery with a whip or cowhide; when a serious bodily injury is inflicted upon the person assaulted; when committed with a premeditated design and by the use of means calculated to inflict great bodily injury."

The only part of said paragraph that concerns us in this case is the last part where it reads: "when committed with a premeditated design and by the use of means calculated to inflict great bodily injury."

Appellant assigns as error, among other things: (1) That the said count II did not state a crime un-

der our statute above quoted because it did not set out the degree of force used so that it could be said as a matter of law that the means used were calculated to inflict great bodily injury. (2) That two distinct and separate offenses were charged in one count in violation of Section 44–725 Arizona Code 1939. (3) That the evidence wholly failed to establish any serious injury to the complaining witness, or that the defendant committed any act against the complaining witness which constituted an aggravated assault.

The defendant in this case testified on cross-examination in part as follows:

"Q. You were in the fight all of the time it was going on, weren't you? A. Yes, I was in the fight. I don't know that we—

"Q. (Interrupting) You didn't hit anybody else except the two American boys? A. I just hit one.

"Q. Which one? This one? (pointing to Latham) A. Yes.

"Q. This is the one you worked on? A. Yes.

"Q. After you left there where did you go? A. Dance.

"Q. How did you get down there? A. Oh, ride a truck down there.

"Q. There wasn't a dance that night, was there? A. No, sir.

"Q. Then where did you go? A. Went to the river.

"Q. Why did you go to the river? A. Well, just went down there because we wanted to, that's all.

"Q. Beg pardon? A. Just wanted to go there.

"Q. Just wanted to go there at midnight? A. Yes, sir.

"Q. What did you do when you went down there? A. Stand there.

"Q. How long did you stay there? A. Around four. . . . "

On direct examination of the defendant we quote this evidence:

"Q. Altogether, how many times did you hit him?
A. Oh, about six times."

Another witness in the case testified that they went to the river because they were afraid of the cops.

Rafael Soqui, a witness for the State, testified as follows:

"Q. You say you started to fight with them? A. Yes, sir.

"Q. How many of you; all of you? A. Just four of us.

"Q. Just four of you? A. Yes, sir.

"Q. Then what happened after you started fighting; how did you fight? A. Well, slugging and kicking and all of that.

"Q. Slugging and kicking and all of that? A. Yes, sir. . . .

"Q. All right, after you hit them, then what did you boys do? A. Three of them kept on fighting them and we just crossed the street and watched them fight.

"Q. You say you crossed the street? A. Yes, sir.

"Q. In this hitting of these boys did Romero take part in that? A. Yes, sir.

"Q. Was he in that? A. Yes, sir."

The prosecuting witness, Thomas Latham, testified:

"Q. And after you went down just what happened to you? Were you struck again? A. Well, yes sir. One of them got me by the hair of the head and two of them had my legs and just churned me up and down on the concrete.

"Q. I understood you to say that one got you by the hair of the head and two on your legs and churned you up and down on the concrete? A. Yes.

"Q. By 'churning', you mean pounding up and down the concrete? A. Yes.

"Q. Were you moved from the concrete, or did everything take place right there on the concrete? A. It was right there on the concrete, yes, sir.

"Q. Then what happened after you were churned up and down on the concrete, what else happened to

you; what else was done to you? A. Well, I was kicked in the face and in the back and I got up somehow. I don't know how I done it. I got away from them just a little bit. . . . "

■■ The Arizona statute is rather broad in the matter of the crime of aggravated assault, for the statement "when committed with a premeditated design and by the use of means calculated to inflict great bodily injury" does not compel the state to show that an injury was inflicted. We hold that where one is churned up and down on the cement and is kicked in the face in the same conflict, besides being hit with the fist, it is ample compliance with our law to constitute aggravated assault.

Arizona Code 1939, Section 43–116, states:

" . . . All persons concerned in the commission of a crime, whether it be a felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission . . . are principals in any crime so committed. . . . "

There can be no question that a crime was committed here. In the excitement of a fight where the odds are against a person it would be hard to tell who struck certain blows or did certain things. However, the defendant in this case admitted that he struck the first blow in the fight and hit the prosecuting witness Latham. There is evidence also to show that at least one participant in the fight went away, and that particular witness said there were only five at beginning. The jury determined that this defendant did do the acts alleged in the commission of an aggravated assault.

Appellant submits to us the case of *People* v. *Perales*, 141 Cal. 581, 75 Pac. 170, but that state had at that time an entirely different statute, the section being as follows:

" ' . . . Every person who commits an assault upon the person of another with a deadly weapon or instrument, or by any means or force likely to produce great bodily injury, is punishable, etc. . . . ' "

Passing to the next case of *Wilson* v. *State,* 162 Ark. 494, 258 S. W. 972, 973, 33 A. L. R. 1182, cited by appellant, the statute in that state at the time the opinion was rendered was as follows:

" 'If any person assault another with a deadly weapon, instrument or other thing, with an intent to inflict upon the person of another a bodily injury where no consideration provocation appears, or where the circumstances of the assault show an abandoned and malignant disposition, he shall be adjudged guilty . . . .' "

This is a case where the court held that shoes which a man wears as a part of his ordinary apparel are not deadly weapons within the meaning of the statute relative to aggravated assault, and we quite agree with the case, but it does not apply to such a case as the one at bar.

The appellant also cites the case of *Walden* v. *State,* 89 Tex. 464, 232 S. W. 523, and neither can we receive help from that case although the Texas statute from which it was taken is like ours, yet the facts are quite different because the facts involved in that case are where the father was prosecuted for aggravated assault on his seven year old son, and the court commented on the right of the father to chastise.

The prosecuting witness Holcomb was absent from the state at the time of the trial and the evidence submitted was directed to the assault upon Thomas Latham only.

Other matters raised by both the State and defendant in this cause we do not think necessary to enter into, but from a very careful reading of all of the evidence we are convinced that the evidence war-

ranted the conviction of the defendant for aggravated assault; that he had a fair and impartial trial and that no prejudicial error was committed.

Judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.