[Civ. No. 7897.   Third Dist.   June 23, 1950.]

JOHN JACKSON et al., Petitioners, v. THE SUPERIOR COURT OF MERCED COUNTY, Respondent.

Don C. Mayes for Petitioners.

Fred N. Howser, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

VAN DYKE, J.—Petitioners John Jackson and Evelyn Jackson have applied for a writ of prohibition to be directed to the Superior Court of this state in and for the County of Merced, restraining that court from proceeding further under an information filed therein by the district attorney of that county, charging a public offense against petitioners. The information charged that petitioners on March 27, 1950, did

wilfully and unlawfully delay or obstruct a public officer in the discharge or attempted discharge of a duty of his office, to wit, lawful arrest of a person. The information is drawn in the language of section 148 of the Penal Code.

It appears from the petition and the answer thereto as follows: On March 26th at about 1:30 p. m., John Borth, a special deputy sheriff who resides at Winton in Merced County, observed one Harvey Jackson, with some other boys, shooting with BB guns at a light bulb affixed to a public building in Winton. Borth knew the boy, who likewise lived in Winton with his parents, petitioners here, and knew his approximate age. He stopped and talked to the boys. When he got out of his car these boys ran away and then came back to talk to him, and he told them they shouldn't be playing around the building and doing what they did. On the following day and around five o'clock in the afternoon Officer Borth, in company with Officer Adcock, likewise a deputy sheriff, went to the home of Harvey Jackson to arrest him for the incident above stated. They had no warrant for his arrest. Adcock asked the boy to come to the car and told him he was under arrest and to get into the back seat. One of the petitioners, Evelyn Jackson, mother of the boy, was close by the car and she told her son not to get in the car, held out her arm to keep him from going in the car and called the boy's father, petitioner John Jackson. The officers told him what was wanted, whereupon Jackson slammed the car door shut, told the boy to go into the house and stay there and not to go with the officers. Thereupon Adcock said if the parents would not let the youngster go he (Adcock) would take all three of them, and Jackson replied that would be fine, but they would have to have papers and they wouldn't go without them nor allow them to take the boy. Thereupon the officers left the scene and obtained a warrant from a magistrate for the parents as well as the boy and effected arrests pursuant to warrant. A preliminary examination of petitioners was held, transcript of which appears in the record here. The warrant, so far as petitioners be concerned, while a copy of it has not been made a part of the record, apparently charged petitioners with the crime of violation of section 702 of the Welfare and Institutions Code, that is, contributing to the delinquency of a minor, and upon the magistrate's determination that probable cause had been shown in respect of this offense petitioners were held to answer. Thereafter the district attorney filed the information above

set forth in substance, as an amended information, charging the offense commonly known as resisting an officer.

It is without dispute that the attempted arrest charged to have been resisted was being made without a warrant and was for an offense committed by the boy Harvey Jackson some 28 hours previously in the presence of Officer Borth. While it is not clear from the transcript that Officer Borth attempted to make any arrest and, indeed, it substantially appears that the arrest was being attempted by Officer Adcock upon information from Officer Borth, yet since both officers were present we have chosen to treat the matter as an arrest attempted by Officer Borth. It is of course obvious that Officer Adcock upon mere information from Officer Borth would have no lawful right, without a warrant, to arrest the boy for the commission of a public offense admittedly not rising above the quality of a misdemeanor. So treating the subject of the attempted arrest leaves the situation one where the right of Officer Borth to make the arrest without a warrant comes in question.

By the specific provisions of the Penal Code peace officers and private citizens alike may make an arrest without a warrant for a public offense committed or attempted in the presence of the person making the arrest. On such an occasion the powers of arrest possessed by peace officers and by private citizens are equal. But to the right to arrest without warrant the law attaches the following conditions: The arrest must be made at the time the offense or any part of the offense is being committed or within a reasonable time thereafter or upon fresh and immediate pursuit of the offender. (6 C.J.S. 590.) As stated by the Supreme Court in *People* v. *Craig*, 152 Cal. 42, 47 [91 P. 997], "It seems to be generally held that an arrest for a misdemeanor without a warrant cannot be justified if made after the occasion has passed, though committed in the presence of the arresting officer."

It was said in *Oleson* v. *Pincock*, 68 Utah 507 [251 P. 23]:

"No hard and fast rule can, however, be laid down which will fit every case respecting what constitutes a reasonable time. What may be so in one case under particular circumstances may not be so in another case under different circumstances. All that can be affirmed with safety is that the officer must act promptly in making the arrest, and as soon as possible under the circumstances, and before he transacts other business."

In *Wahl* v. *Walton,* 30 Minn. 506 [16 N.W. 397], wherein the statute under consideration was the same as our own and in a case where five hours had elapsed between the time when an officer observed an offense committed and the time he made an arrest without warrant therefor, the court said:

". . . The power to arrest without warrant, while it may in some cases be useful to the public, is dangerous to the citizen, for it may be perverted to purposes of private malice or revenge, and it ought not, therefore, to be enlarged. When it is said that the arrests must be made at the time of or immediately after the offense, reference is had, not merely to time, but rather to sequence of events. The officer may not be able, at the exact time, to make the arrest; he may be opposed by friends of the offender; may find it necessary to procure assistance; considerable time may be employed in the pursuit. The officer must at once set about the arrest, and follow up the effort until the arrest is effected. In *Regina* v. *Walker, supra* [25 Eng.Law&Eq. 589], some two hours had elapsed between the offense and the arrest, and it was held the authority to arrest was gone, because there was no continued pursuit; and the same was held in *Meyer* v. *Clark, supra* [41 N.Y. Superior Ct. 107], because the officer had departed and afterwards returned, the court saying: 'The shortness of the interval does not affect the question.'

"In this case, some five hours having elapsed . . . during which the defendant was not about anything connected with the arrest, the court was right in its instruction that there was no authority to arrest for that occurrence."

In *Meyer* v. *Clark,* 41 N.Y.Super.Ct. 107, referred to above in the quotation from the opinion in *Wahl* v. *Walton,* the opinion contained the following:

"I do not regard the *shortness* of the intervening time, between the commission of the offense and the arrest, as affecting the question of the officer's right. If a short interval continues the right, a longer interval would also, and courts or juries would have to measure degrees of time in determining the rights of parties. And the protection of individuals from arbitrary arrest, will be better secured by requiring a complaint and a magistrate's warrant in all cases of arrest not literally within the letter of the law.

"In the case before us we can see no necessity for making the arrest in the manner it was done. The penalty is a money fine only, and there was no probable danger of an escape of the offender. If there was time to report the case to the

captain of the precinct, there was time, or time should have been made, to obtain from a magistrate a warrant. . . . The liberty of the citizen is too sacred to be lightly or causelessly interfered with; and the officers of police, however necessary and valuable they may be as conservators of order and in the enforcement of law, must keep themselves within the limits of the law, and not assume functions unless given in the law.

"That the defendants acted under and in pursuance of the orders of the captain of the precinct, does not relieve them from responsibility for their act. Neither they nor the captain could make the arrest without a warrant."

The rule is thus stated in 4 American Jurisprudence, section 67, page 46:

"In making an arrest without a warrant for breach of the peace or a misdemeanor, an officer must act promptly at the time of the offense. If he does not act immediately after the offense has been committed, he can thereafter make arrests only by procuring a warrant and proceeding in accordance with its terms. The same rule applies to an arrest made by a private individual in cases in which, if he acts immediately, an arrest without a warrant is permitted. In order to justify a delay, there should be a continued attempt on the part of the officer or person apprehending the offender to make the arrest; he cannot delay for any purpose which is foreign to the accomplishment of the arrest. If an officer sees an affray and calls other officers to his assistance, the fact that the actual arrest is made after the affray is over does not make the arrest without a warrant illegal."

It is contended by the respondent that Harvey Jackson also committed a public offense in the presence of Deputy Adcock in that several hours before the arrest the deputy had seen him shooting a BB gun around Front Street in Winton. A reading of the transcript demonstrates that the arrest attempted was not attempted for that offense, if offense it was. All that was said about that by any witness at the preliminary hearing was testified to by Officer Adcock in relation to two BB guns he said he had taken from Harvey Jackson on "Main Street, Winton Way and Walnut Avenue that afternoon," taken he said "from Harvey Jackson, him and another boy both had BB guns and shooting them around the Front Street." This incidental testimony is entirely inadequate to support a contention that the arrest attempted was in fact for that occurrence. On the other hand, it appears clearly that

the arrest attempted was for the offense observed by Officer Borth. Thus Adcock testified that he told the boy's parents he was arresting the boy for "shooting his BB gun around the hall," the hall being the building to which the light bulb was affixed. Also Borth testified: "I went to his house with Adcock to pick him up for his arrest. Q. And what was that arrest for? A. For destroying public property." He also said he was driving down the street toward Winton Hall from the north and saw Harvey and some other boys, "Harvey was standing directly in front of the hall with the BB gun, shooting at the light in front of the hall, that is the Winton Community Hall." Also petitioner Evelyn Jackson testified that when the officers came up they told her that Harvey was under arrest, that they were "taking him in for breaking lights in the school house with his BB gun."

There is no support for the claim that the arrest was being made for anything observed by Officer Adcock.

While the statute itself concerning arrest without warrant does not expressly place any limit of time within which such arrest must be made, if in fact the offense is committed in the presence of the person making the arrest, nevertheless by continuous current of authority such limitation has been read into such statutes and has for long been a part of the common-law preceding the statutes in the various states.

In line with the authorities cited above we hold that in order to justify an arrest without warrant the arrestor must proceed as soon as may be to make the arrest. And if instead of doing that he goes about other matters unconnected with the arrest, the right to make the arrest without a warrant ceases, and in order to make a valid arrest he must then obtain a warrant therefor.

Applying the foregoing rules to the facts shown at the preliminary hearing, we see that there was no reason why Officer Borth should not have arrested Harvey Jackson at once. The offense was committed in his presence; he knew the boy, his age, and his parents; he lived in the same small community; no resistance was then offered; no aid was needed. Instead of arresting the boy the officer simply told him not to do what he had been doing, and having so acted he departed, and, for all that was shown, did nothing further until more than a day had passed. He had no right then to make an arrest without a warrant.

Petitioners are charged with obstructing a public officer in the discharge or attempted discharge of a duty of his office, to

wit, lawful arrest of a person. By the express terms of the charge, the obstruction must have been to the making of a lawful arrest, else the offense was not committed. An officer is under no duty to make an unlawful arrest. If he attempts to do so, reasonable resistance may be made, either by the person he attempts to arrest or by others who may come to his aid. (*People* v. *Perry*, 79 Cal.App.2d Supp. 906, 914 [180 P.2d 465]; *People* v. *Craig, supra,* pages 45-50.) No claim is made or could be made upon the record here that the resistance passed the bounds of reason.

A defendant in a criminal action may be held to answer if it appears from the examination that a public offense has been committed and there is sufficient cause to believe the defendant guilty thereof. (Pen. Code, § 872.) Here it appears no public offense was committed. ▮ The information, therefore, lacks the support necessary to authorize further proceedings by the respondent court. Prohibition is an appropriate means to test the right of the People to proceed with this prosecution. (*Greenberg* v. *Superior Court,* 19 Cal.2d 319 [121 P.2d 713].)

Let the peremptory writ issue.

Adams, P. J., and Peek, J., concurred.