406 P.2d 729

**STATE of Arizona, Appellee,**

**v.**

**Joe Ernest BLANKENSHIP and William Lee Blankenship, Appellants.**

**No. 1469.**

Supreme Court of Arizona.

En Banc.

Oct. 14, 1965.

**62**

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, Former Atty. Gen., Norman E. Green, Pima County Atty., Carl Waag, Deputy County Atty., for appellee.

Walter M. Stevenson, Tucson, for appellants.

McFARLAND, Justice.

Appellants, Joe Ernest Blankenship and William Lee Blankenship, were charged and tried by a jury along with Winifred Obia Norris, on three felony counts, to-wit: obstructing justice, in violation of A.R.S. § 13–541; assault with intent to commit a felony, in violation of A.R.S. § 13–245, as amended; and, riot, in violation of A.R.S. § 13–631. A motion to dismiss all three counts was granted as to co-defendant Norris. The jury found both appellants guilty on each of the three counts. The court suspended sentence on the count for riot, reduced the other two counts to misdemeanors, and sentenced appellants thereon to sixty days on each count, to run concurrently. The trial court denied appellants' motion for new trial. From the judgment and sentence, and denial of their motion for a new trial, appellants appeal.

On the afternoon of June 8, 1963, at approximately 2:30 p. m., two plain-clothes officers from the Tucson Police Department were conducting an investigation to determine if stolen property was present at the County Club Trailer Resort, 2627 Benson Highway, Tucson, Arizona. The officers, detective James F. Gaston, and detective Billy Edwards, were driving an unmarked car. They pulled up to a large building in which the trailer court office was located, and entered a foyer containing mail boxes for trailer court tenants. A door off the foyer opened into a small room. The officers, without entering this room, looked in and found Paul Blankenship, elderly arthritic father of appellants, lying on a bed, and Louie Blankenship, Paul's brother, sitting next to him. The officers inquired as to the whereabouts of the owner of the trailer court, and stated they believed him to be Joe Blankenship. Louis assured them Joe was the owner, and stated he was probably at the trailer court swimming pool, a short distance away. The officers then left the building.

Gaston remained outside the office while Edwards proceeded to the pool area in search of Joe. Edwards was unable to locate him, but did find the brother Bill, co-appellant. Bill informed Edwards that he did not know where Joe was. Edwards then assured him that he, Edwards, only wanted to talk with Joe, and that there was no trouble. Edwards did not identify himself to appellant as a police officer at this time.

Edwards then returned to the office building, and related to Gaston what had occurred. During the seven to eight minutes Edwards had been gone Gaston had seen several people go in and out of the office on various errands, but he did not know if Joe Blankenship was one of these. The two officers then re-entered the building, and again went up to the door of the little room. Both Paul and Louie Blankenship were still in the room, but Paul was standing up with the aid of crutches. The officers again asked where they could locate Joe. Paul Blankenship became excited, and told them to leave or he would call the police. Gaston and Edwards then identified themselves as police officers, exhibiting their identification cards, but this only aggravated Paul further. He began to move toward the officers, and as he lifted one crutch he lost his balance and fell against the open door sliding to the floor. Both Gaston and Edwards testified that at no time prior to Paul's falling did either of

them threaten or touch him. In fact, until he fell, neither officer had entered the little room. The officers offered assistance, but this only agitated Paul, and on the advice of Louie they left the office. Edwards, again leaving Gaston outside the building, left the trailer court premises to telephone his supervisor to inform him of their progress, and returned several minutes later. Gaston then drove to the swimming pool, leaving Edwards outside the building, again in an effort to locate Joe Blankenship.

A few minutes later a pick-up truck came speeding from the direction in which Gaston had left, and William Blankenship jumped out, and went into the building. One Alfred Cameron, a resident of the trailer court, testified for the state that he had gone into the little room and found Paul lying on the floor. He testified that William came in, asking what happened, "if those flatfeet had hurt him?". Cameron testified that Paul told his son he had fallen, and that the officers had nothing to do with his fall.

Immediately after the pick-up appeared another car drove up, containing defendant Winifred Norris and Louie. William then came out of the building, and went up to Edwards and told him it was a "hell" of a thing to do to an old man. He told Edwards to come in and see what he had done. Both Edwards and Cameron testified they saw appellants' mother fall as she ran to the office. A scuffle then ensued between

Edwards and William. At this time Joe appeared on the scene. Edwards testified that while scuffling some one other than William struck him from behind with a hard object, stunning him. Edwards broke away, and ran in the direction of the pool in search of Gaston. At this time he was bleeding, and his clothes were torn and disarranged. He found Gaston at the pool, and both got into the car to call for assistance on the two-way radio.

The two appellants followed Edwards, and ran up to the driver's side of the car where Gaston was seated. Gaston testified that he noted at that time that Joe was carrying what appeared to be a four-by-six-inch piece of cinder block. Gaston testified further that Joe yelled: "You guys have put my father in jail before. I have had enough of this. I am going to kill you lousy bastard cops." Gaston then opened the car door, shoving appellants backward, and got out, removing his service revolver and yelled to Joe to drop the brick. It was at this time that a crowd began to gather—estimated at from fifty to a hundred persons. William attempted to quiet his brother, but then Edwards got out of the car, and told them they were both under arrest. Appellants then "jumped" Edwards and began to hit him. Gaston pulled the men apart, and it was at this time that various law-enforcement vehicles began to arrive in answer to the radio call put out by Gaston and Edwards.

Appellants' first assignment of error is that the trial court erred in failing to grant a new trial on grounds of newly-discovered evidence. This evidence consisted of affidavits of various persons who had witnessed the events leading up to appellants' arrest.

Rule 310 of the Arizona Rules of Criminal Procedure, 17 A.R.S., provides, in part:

"Mandatory Grounds for New Trial

"The court shall grant a new trial if any of the following grounds is established:

\*   \*   \*   \*   \*   \*

"3. That new and material evidence, which if introduced at the trial would probably have changed the verdict or the finding of the court, is discovered which the defendant could not with reasonable diligence have discovered and produced upon the trial."

On an appeal from an order denying a new trial to the defendant in a criminal case, the matter is largely one of discretion with the trial court, and the denial will not be grounds for reversal unless it appears affirmatively that the court abused its discretion, and acted arbitrarily. State v. Bogard, 88 Ariz. 244, 354 P.2d 862; State v. Turner, 92 Ariz. 214, 375 P.2d 567; Morgan v. United States, 301 F.2d 272 (9th Cir., Ariz., 1962). A motion for new trial will not be granted on the ground of newly-discovered evidence where such evidence is merely cumulative, State v. Villavicencio,

95 Ariz. 199, 388 P.2d 245; impeaching, State v. Peters, 60 Ariz. 102, 131 P.2d 814; Indian Fred v. State, 36 Ariz. 48, 282 P. 930; contradictory, Talley v. State, 18 Ariz. 309, 159 P. 59, or would probably not have changed the verdict or findings of the court. Flowers v. State, 27 Ariz. 70, 229 P. 1028.

Careful examination of the various affidavits in the light of the above principles reveals that the trial court did not abuse its discretion in denying appellants' motion. Several of the affidavits contained statements that Alfred Cameron, witness for the state, was not present, or was not seen by the affiant. These statements are contradictory, thus not sufficient to warrant a new trial. One affidavit contains hearsay testimony, inadmissible because incompetent, if a new trial were granted. The affidavits also contain cumulative evidence. The only affidavits offered by appellants which contain any "new evidence" are those of two boys, Douglas Murphy, twelve, and Louis Green, thirteen.

The two boys made affidavits concerning what occurred, stating that one of the officers hit one of appellants on the mouth. This evidence is at variance with other testimony offered in the case. There was no claim made by appellants that either of them had been hit, and no testimony in this regard. The affidavits also showed that the boys were at some distance when the events they witnessed began. The general rule is stated in 2 Underhill's Criminal Evidence (5th Ed.), § 433, at pages 1098–1099:

> "The new evidence must be such as would have probably resulted in the acquittal of the accused had it been produced at the trial, and it is therefore necessary that it shall appear to the court hearing the motion that it is probably true. The witness who is expected to testify must appear to the court to be credible. His credibility is to be determined by the judge hearing the motion. * * * The refusal of a new trial for newly-discovered evidence on an affidavit incredible in view of the claim made and evidence at the trial is not error."

This court, in the early case of Talley v. State, supra, stated:

> "The affidavits are so widely at variance with the actual facts as they were told on the trial that we think they may be wholly discredited. * * *
>
> "The learned judge who heard all of the evidence was well qualified to pass upon the weight and sufficiency of the affidavits, and we are satisfied that his disposition of them was correct." 18 Ariz. at 321, 159 P. at 64.

Clearly then, the trial court did not abuse its discretion when it denied appellants' motion for a new trial.

■ Appellants' second, third, and fourth assignments of error are that the trial court erred in failing to grant their motion for directed verdict as to the three counts on grounds of insufficiency of the evidence. We have repeatedly held that, in reviewing sufficiency of the evidence in support of a verdict, the evidence must be viewed in the light most favorable to the state, and all reasonable inferences resolved against the defendant. State v. Mangrum, 98 Ariz. 279, 403 P.2d 925 (June 30, 1965); State v. Moraga, 98 Ariz. 195, 403 P.2d 289 (June 17, 1965).

Appellants contend they were not guilty of obstructing justice because their resistance was to an illegal arrest. A.R.S. § 13–1403 provides that an officer may arrest without a warrant:

"1. When the person to be arrested has committed a felony or misdemeanor in his presence. If the arrest is for a misdemeanor, the arrest shall be made immediately or on fresh pursuit."

Joe Blankenship committed a misdemeanor in the presence of both officers. While standing alongside the officers' car, he yelled "You guys have put my father in jail before. I have had enough of this. I am going to kill you lousy bastard cops, * * *."

Gaston testified that Joe had the cinder block in his hand at this time. Clearly there was an assault, in violation of A.R.S. § 13–242. The arrest followed immediately after when Edwards stepped out of the car and told both appellants they were under arrest. There is no doubt that William Blankenship committed an assault and battery on the person of officer Edwards while outside the trailer court office. The evidence shows that Edwards, stunned, dazed and bleeding, made the arrest as soon as he recovered and was able to find assistance.

In Jackson v. Superior Court, 98 Cal.App. 2d 183, 219 P.2d 879, the California court stated:

"' * * * The power to arrest without warrant, while it may in some cases be useful to the public, is dangerous to the citizen, for it may be perverted to purposes of private malice or revenge, and it ought not, therefore, to be enlarged. When it is said that the arrests must be made at the time of or immediately after the offense, reference is had, not merely to time, but rather to sequence of events. The officer may not be able, at the exact time, to make the arrest; he may be opposed by friends of the offender; may find it necessary to procure assistance; considerable time may be employed in the pursuit. The officer must at once set about the arrest, and follow up the effort until the arrest is effected. * * * '" 219 P.2d at 881.

■ In the instant case the arrest was immediate and complied with A.R.S. §

13-1403, supra. Therefore, the contention of appellants as to count one is unfounded.

Next, appellants contend the evidence was insufficient to sustain the verdict as to assault with intent to commit a felony. A.R.S. § 13-245, as amended

"A. An assault or battery is aggravated when committed under any of the following circumstances:

\*   \*   \*   \*   \*   \*

"5. When a serious bodily injury is inflicted upon the person assaulted.
"6. When committed with a premeditated design and by the use of means calculated to inflict great bodily injury."

This court, in State v. Romero, 61 Ariz. 249, 148 P.2d 357, interpreted that statute as follows:

"The Arizona statute is rather broad in the matter of the crime of aggravated assault, for the statement 'when committed with a premeditated design and by the use of means calculated to inflict great bodily injury' does not compel the state to show that an injury was inflicted. We hold that where one is churned up and down on the cement and is kicked in the face in the same conflict, besides being hit with the fist, it is ample compliance with our law to constitute aggravated assault." 61 Ariz. at 254, 148 P.2d at 359.

Under State v. Romero, supra, the evidence clearly shows appellants were guilty of aggravated assault. They grabbed Edwards, pushed him to the ground, and beat him. The evidence in the instant case is sufficient to support a verdict for assault with intent to commit a felony—that felony being aggravated assault. This is sufficient, and the contention of appellants that there was no showing of infliction of serious bodily injury or a showing that means were used calculated to inflict great bodily injury, is unfounded.

Appellants also contend the evidence was insufficient to support the guilty verdict as to the crime of riot. A.R.S. § 13-631 provides:

"A. Any use of force or violence disturbing the public peace, or any threat to use such force or violence, if accompanied by immediate power of execution, by two or more persons acting together, and without authority of law, is a riot."

Appellants, in the instant case (by the use of force), threw Edwards to the ground. The arrest was legal. These acts amounted to riot as provided for in A.R.S. § 13-631, supra. One of the appellants threatened the officers. All of this constituted disturbing the peace. Not only was there a threat of force and violence, but there was in fact force and violence which disturbed the public peace, accompanied by the immediate

power of execution, by persons acting without authority of law.

■ Appellants next contend the trial court committed fundamental error in failing to instruct the jury on its own motion first that all the jurors must find the defendants guilty of the same violation of each statute under one fact situation where there are numerous ways to find a violation of the statute, and numerous situations in evidence which would give rise to that violation; and, as to the appellants' right to use force to protect their property, and in the prevention of crime. It is not necessary for us to pass upon the propriety of such instructions, as this court has repeatedly held that where a defendant desires special instructions, and has neglected to request same, it constitutes a waiver of any right to such admonition. State v. Rivera, 94 Ariz. 45, 381 P.2d 584; State v. Francis, 91 Ariz. 219, 371 P.2d 97; State v. Pulliam, 87 Ariz. 216, 349 P.2d 781; State v. Lee, 80 Ariz. 213, 295 P.2d 380, 56 A.L.R.2d 1166; Sisson v. State, 16 Ariz. 170, 141 P. 713.

■ Appellants assign as error failure to give their requested instruction on self-defense. Appellants did not take the stand, or testify in regard to self-defense, nor present any evidence concerning self-defense. Under these circumstances the court properly refused to give the instruction. State v. Fields, 92 Ariz. 53, 373 P.2d 363; Everett v. State, 88 Ariz. 293, 356 P.2d 394;

Walker v. State, 52 Ariz. 480, 83 P.2d 994; Judd v. State, 41 Ariz. 176, 16 P.2d 720.

Judgment affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and BERNSTEIN and UDALL, JJ., concurring.