STATE of Maine

v.

Theophilus A. FITANIDES.

Supreme Judicial Court of Maine.

May 25, 1977.

Pasquale J. Perrino, Jr., Peter J. Goranites, Asst. Attys. Gen., Augusta, for plaintiff.

Robert N. Walker, Basil A. Latty, Yarmouth, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

WERNICK, Justice.

In a consolidated trial before a jury held in the Superior Court (York County) on April 14th–16th, 1975, defendant Theophilus A. Fitanides was found guilty, as charged, of having committed the crimes of Speeding (29 M.R.S.A. § 1252), Failure to Stop for a Police Officer (29 M.R.S.A. § 2121), and Assault on a Police Officer (17 M.R.S.A. § 2952).

Defendant has pressed a consolidated appeal from each of the judgments of conviction.

We sustain defendant's appeal from the speeding conviction but deny it as to the others.

The jury was entitled to find the following facts.

On December 28, 1974, Officer Robert Poisson of the Biddeford Police Department was in his police cruiser operating a radar unit to clock the speed of passing vehicles. The cruiser was parked at the intersection of Bowdoin and May Streets in Biddeford, May Street running north-south.

Officer Poisson's radar unit clocked a vehicle being operated by defendant in a southerly direction on May Street as traveling at a speed of 49 miles per hour. The officer immediately gave chase. Defendant's vehicle soon turned right onto Route 111, the so-called Alfred Road. Officer Poisson continued to pursue and activated the cruiser's siren and flashing lights. De-

fendant's vehicle travelled approximately three-tenths of a mile west on Route 111 before it pulled over and stopped in response to the officer's signal.

When Officer Poisson requested of defendant his license and registration, defendant asked, "What for?" Poisson stated that defendant was being stopped for speeding and he asked defendant to remove the license from his wallet because "departmental policy" prohibited the officer from taking the wallet. Defendant replied: "Well, you are not allowed to see my license either," and thereupon folded his wallet and drove off. Poisson ran to his cruiser and renewed pursuit of defendant.

Officer Poisson's initial stop of defendant was in the City of Biddeford. The renewed chase took Poisson two-tenths of a mile farther west on Route 111 to a left-hand turn onto the so-called Mountain Road, and thence another 2 and 7/10 miles to defendant's home in the Town of Arundel. During this time Officer Poisson kept constantly activated the cruiser siren, the flashing blue lights on the cruiser's roof and the flashing strobe headlights. He caught up with defendant shortly after the turn onto the Mountain Road and remained within one to two car lengths of defendant's vehicle until defendant turned into his driveway.

Following defendant into the driveway, Officer Poisson advised defendant that he was under arrest for speeding and failure to stop for an officer. Defendant thereupon punched Poisson in the nose. In the meantime, Officer Denis Letellier, another Biddeford police officer, had arrived to assist Poisson. The two officers eventually subdued defendant and made a custodial arrest.

*Speeding*

■ Defendant first assigns error as to his conviction for speeding in violation of 29 M.R.S.A. § 1252.[1]

Defendant contends that the conviction must be reversed because the presiding Justice erroneously instructed the jury, over objection by defendant, that § 1252–2 C fixes a 25-mile per hour speed limit in areas of three separate and distinct kinds: (1) so-called "business districts" of *unspecified density*, (2) so-called "residential districts" of *unspecified density*, and (3) "built-up portions" of the *special density specified in subsection 3 A.* The Justice further charged the jury—in this specific regard without objection by defendant—that an area is "built-up" within the definition of subsection 3 A if the structure density therein described exists on only one side of a street. The presiding Justice gave this latter instruction because evidence had been presented that along one side of May Street in the vicinity of the Bowdoin-May Streets intersection there were dwelling houses approximately 35 feet apart for a distance of ¼ of a mile.

The evidence made plain that the area through which defendant had passed could not reasonably be conceived to be of a "business" nature. Hence, the effect of the presiding Justice's instructions was to authorize a jury verdict that defendant was guilty of speeding on *either* of two alternative findings by the jury: (1) the area in question was a "residential district", *or* (2) it was a "built-up portion" within the definition set forth in § 1252–3 A.

Defendant contends on appeal that "residential district" is not utilized in § 1252–2 C as a self-sufficient concept alternative to "built-up portion", but rather the statute

---

1. 29 M.R.S.A. § 1252 provides in pertinent part:
   "*2. Rates of speed.* Except where the conditions . . . require a lower speed . . ., the following maximum rates of speed are established:
   \* \* \* \* \* \*
   "*C. Speed in excess of 25 miles an hour in a business or residential district, or buil[t]-up portion, as defined in subsection 3, shall be unlawful . . . .*"

Subsection 3 in turn provides:
   "*3. Definitions.*
   "*A. Compact or built-up portions.* The compact or built-up portions of any municipality shall be the territory of any municipality contiguous to any way which is built up with structures which are situated less than 150 feet apart for a distance of at least ¼ of a mile."

prescribes a 25-mile per hour speed limit *only* in areas which have the *special density of structures set forth in subsection 3 A* regardless of whether the use of the structures allows for a characterization of the area as "residential", "business", mixed residential and business, or otherwise.

We agree with defendant's position and therefore decide that the conviction of defendant for speeding must be reversed; the presiding Justice's erroneous interpretation of § 1252 could have misled the jury to find defendant guilty of operating in excess of 25 miles per hour merely because they found the area "residential" in character without also finding that there was the density of structures delineated in subsection 3 A.

Based on the face of the statute, its history and the need to avoid constitutional problems arising from other interpretations, we conclude that the "compact or built-up" definition in § 1252–3 A infuses all aspects of § 1252–2 C, in consequence of which the statute prescribes a 25 miles per hour speed limit only if the structures "contiguous to . . . [a] way"—whatever the nature of their use as "residential", "business" or otherwise—are "situated less than 150 feet apart for a distance of at least ¼ of a mile."

On its face subsection 2 C is ambiguous. It permits the interpretation given the jury by the presiding Justice but, equally logically, it may be read to refer to: (1) "business districts" *of a particular density,* (2) "residential districts" *of that same density,* or (3) districts *of that density* occupied by *varied structures* whether characterized as "business", "residential" or otherwise.

The punctuation of subsection 2 C tends to favor this latter interpretation. Concentrating on the words,

"a business or residential district, or buil[t]-up portion, as defined in subsection 3, . . .",

we find significant the comma between the words "portion" and "as." With the comma so placed, "as defined in subsection 3" is separated from all the language preceding it describing the three areas subject to the 25 miles per hour limit. This indicates that "as defined in subsection 3" modifies all three of the concepts preceding the comma after "portion." The punctuation thus supports construing subsection 2 C as if it stated in unambiguous terms:

"a business or residential district, or [other] buil[t]-up portion, [all] as defined in subsection 3,"

since it is reasonable to conclude that had the Legislature intended the subsection 2 C definition to apply only to the last of the three prior concepts, i. e., "compact or built-up portion", the Legislature would have omitted the comma between "portion" and "as."

The statutory predecessors of § 1252 confirm this view that § 1252 prescribes a 25 miles per hour speed limit only as to ways meeting the density specification of the subsection 3 definition.

The original regulation of speed in thickly settled areas appeared as P.L.1921, Chap. 211 § 62. That statute prohibited speeds in excess of 15 miles per hour

"within the compact or built-up portions of any city, town or village."

"Compact or built-up portion" was defined as

"the territory . . . contiguous to any way, which is built up with structures devoted to business, or where the dwelling houses are situated less than one hundred and fifty feet apart for a distance of at least one-quarter of a mile."

Thus, the original appearance of a special density-of-structures requirement was uniquely in relation to an area of "dwelling houses", i. e., a "residential" area.

In 1929 (by P.L.1929, Chap. 327 § 16) the Legislature undertook to increase from 15 to 20, or 25, miles per hour the speed limit in the "compact or built-up portions" of any municipality. To this end, the Legislature retained intact the 1921 definition of "compact or built-up portion." However, because the Legislature wished to prescribe a 25 mile per hour speed limit for the "built-up" areas consisting of dwelling houses ("residential") as well as some of the ways in the built-up areas in which the structures

were devoted to business, but only a 20 miles per hour speed limit as to other ways in such "business" areas, the Legislature was unable to fix the appropriate speed limit as it had done in the 1921 legislation, by relying upon a single comprehensive reference to "compact or built-up portions." Instead, the Legislature was obliged to differentiate that component of the "compact or built-up portion" definition relating to "structures devoted to business" from the other concerned with

> "dwelling houses . . . situated less than one hundred fifty feet apart for a distance of at least one-quarter of a mile"

and to deal with them separately.

In the 1929 amendment the Legislature therefore introduced one provision concerning

> "the territory . . . contiguous to any way which is built up with structures devoted to business . . . ."

The Legislature gave this the shorthand identifying label, "business district", and as to any such "business district" the 1929 statute prescribed two different speed limits: (1) 25 miles per hour as to the ways therein in which the traffic is "controlled at intersections by traffic officers or stop-and-go signals",

and (2) 20 miles per hour "on all other ways" therein.[2]

In a second separate provision the 1929 statute focused upon the other independent aspect of the "compact or built-up portion" definition:—

> "the territory . . . contiguous to any way . . . where the dwelling houses are situated less than one hundred fifty feet apart for a distance of at least one-quarter of a mile."[3]

This type of area the 1929 legislation designated by the shorthand identifying label "residential district"[4] and prescribed for it a speed limit of 25 miles per hour.

In 1939 the Legislature decided to eliminate the differential between 20 and 25 miles an hour established in the 1929 legislation and to fix a uniform 25 miles an hour speed limit for the two separate "business" and "residential" areas dealt with in the "compact or built-up portion" definition. This it did by retaining that definition as it had been previously worded and by condensing the previously separate speed pro-

---

2. The exact language of this part of the 1929 amendment was:

> "*Business section or built-up portion where traffic is controlled.* Twenty-five miles an hour on any way in a business district or built-up portion, as defined herein, when traffic on such way is controlled at intersections by traffic officers or stop-and-go signals; *On other ways in such sections.* Twenty miles an hour on all other ways in a business district or built-up portion, as defined herein;"

3. The exact language of this provision of the 1929 amendment, as here pertinent, was:

> "*In residence district.* Twenty-five miles an hour in a residence district or built-up portion, as defined herein, . . . ."

4. Unless the two separate provisions in the 1929 legislation are thus interpreted to read "business district" and "residential district" as each being the equivalent, respectively, of the separate component parts of the "compact or built-up portion" definition, there would be irreconcilable conflict between the speed limitations fixed as to a "business district" and a "residential district." For example, if "built-up portion" be treated as an independent alternative in the separate provision containing mention of "business district", the 20 mile per hour speed limit imposed on a "business district" would become prescribed for the plainly "residential" type of area comprehended within the "built-up portion" definition, i. e., "the territory . . . contiguous to any way . . . where the dwelling houses are situated less than one hundred fifty feet apart for a distance of at least one-quarter of a mile." This result would contradict the express provision that a motorist may proceed at 25 miles per hour in a "residential district." Similarly, if "built-up portion" be taken as an independent alternative in the separate provision concerning the speed limit for a "residential district", the 25 mile per hour limit designated for a "residential district" would become applicable to the plainly "business" type of area included within the definition of a "built-up portion", i. e., the "territory . . . contiguous to any way" which is "built-up with structures devoted to business." This result would contradict the express specification of a 20 mile per hour limit on all ways in a "business district" where the traffic is not "controlled at intersections by traffic officers or stop-and-go signals."

visions relating to "business" and "residential" areas into a single provision reading:

"25 miles an hour in a business or residential district, or built-up portion, as defined herein, . . . ." P.L.1939, Chap. 213 § 2

Thus, "business district" continued to signify after 1939, as it did before, that facet of the "compact or built-up portion" definition stated to be

"the territory . . . contiguous to any way, which is built up with structures devoted to business, . . . .",

the only difference, after 1939, being the elimination of the 20 miles per hour speed limit as to some types of ways in a "business district."

In 1953, at long last, the Legislature apparently realized that in relation to a "built-up" area in which the structures are devoted to business—previously identified as a "business district",—nothing to clarify understanding is gained by a definition of "built-up" which merely repeats the word "built-up." Hence, by P.L.1953, Chap. 137 § 2, the Legislature amended the "compact or built-up portion" definition to read, as presently:

"The compact or built-up portions . . . shall be the territory . . . contiguous to any way which is built up with structures which are situated less than 150 feet apart for a distance of at least ¼ of a mile."

Thus, commencing with 1953, the Legislature extended to *all* "structures", whatever their use, the density criterion previously specified only for the areas in which the use of the structures was as "dwelling houses" (the "residential"). By this elimination of the prior separate components within the "compact or built-up portion" of a municipality, the Legislature effectively caused the applicability of its 25 miles per hour speed prescription to be *determined solely* by the density criterion of the "compact or built-up portion" definition, viz., whether the "structures" in the area involved, regardless of their use as "business", "residential" or otherwise, which are "contiguous to any way" are

"situated less than 150 feet apart for a distance of at least ¼ of a mile."

This resulted by virtue of a total developmental process combining the factors that (1) in 1929 the Legislature had made "business district" and "residential district" the respective synonyms for the then separately specified components within the "compact or built-up portion" definition; (2) the Legislature in 1953 substituted for these previously separate components the single generic concept "structures"—in consequence of which the "business district" and "residential district" concepts, previously functioning to identify the differentiated structures then embraced within the "compact or built-up portion" definition, became after 1953 superfluous vestiges of the statute's prior evolution; and thereby (3) the actually, and comprehensively, functioning determinant became *solely* the density criterion which had first appeared in 1921 attached only to dwelling houses:—the existence of *any* "structures" less than 150 feet apart for a distance of at least ¼ of a mile.

We are further persuaded that the foregoing assessment of the legislative history of § 1252, and of the current meaning of the statute, is correct because we discern throughout a consistent legislative purpose. We find logical the legislative emphasis on congestion rather than use. Business establishments and dwelling houses scattered over wide distances do not present the traffic problems caused by numerous pedestrians, frequent turns and parked automobiles. However, an area consisting of structures situated in "compact" proximity presents all of these hazards whether the use of the structures be "business", "residential" or other.

■ Finally, we note that the interpretation we give § 1252, unlike that of the presiding Justice, avoids the constitutional question precipitated if the vague terms "business", "residential" and "district" are made the legislative norms determining the criminality of behavior. One court has found constitutional infirmity in like circumstances. *Ex Parte Slaughter*, 92 Tex. Cr.R. 212, 243 S.W. 478 (1922); but see:

*People v. Dow*, 155 Mich. 115, 118 N.W. 745 (1908). While we need not reach this constitutional issue given our contrary interpretation of § 1252, we note that our interpretation is in accord with the well-settled canon that a statute shall be construed in reasonable manner to avoid jeopardizing its validity on constitutional grounds. *State v. Davenport*, Me., 326 A.2d 1, 5–6 (1974).

■ In light of the foregoing, the instructions of the presiding Justice were erroneous and necessitate a new trial on the charge of speeding. While we are satisfied that there was sufficient evidence to support a finding of the requisite density described in subsection 3,[5] the instructions of the presiding Justice authorized the jury to ignore density altogether and to find defendant guilty of "speeding" solely on the basis that the area in question was "residential." [6]

### Failure to Stop

■ Convicted of violating 29 M.R.S.A. § 2121,[7] defendant argues that the evidence was insufficient to support a jury finding that defendant perceived Officer Poisson's signals to stop.

We disagree.

Defendant supports his contention by pointing to his own testimony and that of his wife, who was a passenger in the car, that neither saw Poisson's flashing lights or heard his signals.

There was, however, abundant evidence from which the jury could have inferred otherwise. Defendant admitted that he both heard a siren and saw lights flashing in his rear view mirror before he was *initially* stopped on Route 111. In that first instance, even without any prior warning that he would be signaled to stop by a police officer, defendant perceived the signal without significant delay. The jury was free to reason that defendant likewise recognized without delay Officer Poisson's signal *after* that stop. Moreover, because of the inconclusive nature of the initial stop, the jury could readily infer that defendant was expecting further police contact and would be alerted to hear the siren and see the flashing lights, more particularly in view of defendant's admission to an investigating State Police officer in January, 1975, that defendant had noticed that Poisson was following him. Further, Officer Poisson's testimony indicated that he tailgated defendant with siren, flasher and strobe lights activated for a substantial distance.

Thus, as to the charge against defendant of failure to stop upon signal of an officer, the evidence presented a conflict properly within the fact-finding province of the jury to resolve.

### Assault

■ Defendant last assigns error in regard to the conviction for assault on a police officer, contending that the arrest at his home in Arundel was unlawful and his resistance thereto justified. See, e. g., *State v. Robinson*, 145 Me. 77, 81, 72 A.2d 260 (1950).

The foundation of defendant's claim is 30 M.R.S.A. § 2364, which provided:

> hour, such limit may nevertheless be established by having it ". . . fixed by the municipal officers with the approval of the State Highway Commission with the consent and approval of the Chief of the Maine State Police, and . . . duly posted;" 29 M.R.S.A. § 1252, 2. C.

5. As earlier noted, the presiding Justice charged that subsection 3 density need be proved only as to one side of the street. In so ruling, he cited the word "contiguous" in subsection 3 as supporting his view. We agree with the Justice's conclusion for the reason he ascribed, and for the further reason that the dangers of thickly settled areas catalogued above exist where only one side of a way is highly developed.

6. We note that in any area of a municipality in which the "built-up portion" density criterion may be inapplicable to bring into play the statutorily prescribed speed limit of 25 miles per

7. The operative provision of that section reads: "It shall be unlawful for the operator of any motor vehicle to fail or refuse to stop such vehicle, upon request or signal of any . . . [law enforcement] officer."

"Every municipal law enforcement officer in fresh pursuit of a person who travels beyond the limits of the municipality in which the officer is appointed shall have the same power to arrest such person as the officer has within the said municipality. This section shall apply to both felonies and misdemeanors.

"With respect to felonies, the term 'fresh pursuit' as used in this section shall be as defined in Title 15, section 152; *with respect to misdemeanors 'fresh pursuit' shall mean instant pursuit of a person with intent to apprehend.*" (emphasis supplied)

Emphasizing the statutory command that pursuit for misdemeanors be even fresher than "fresh", viz. "instant", defendant argues that Officer Poisson did not conduct himself in compliance with § 2364. More precisely, defendant maintains that the failure of the officer to complete his arrest at the initial stop on Route 111 interrupted the officer's pursuit and deprived him of power to arrest in the Town of Arundel.

Defendant's contentions are without merit.

By operating a motor vehicle at a speed of 49 miles per hour in an area in which the statute prescribed a speed limit of 25 miles per hour because one side of May Street was "built up with structures . . . situated less than 150 feet apart for a distance of at least ¼ of a mile",[8] defendant committed the misdemeanor of speeding in the presence of Officer Poisson. It was therefore lawful for Officer Poisson to arrest defendant without a warrant, and the officer undertook to make an arrest as soon as he perceived that the misdemeanor was committed. This was plainly instant action. As he was about to complete the arrest when defendant pulled over on Route 111, Officer Poisson was frustrated by defendant's driving away. Officer Poisson jumped into his car at once in renewed pursuit of defendant. Again, in the circumstances nothing could have been more "instant."

We reject defendant's contention that Officer Poisson's "instant pursuit" of defendant terminated when the officer first caught up with defendant and stopped him. This initial stop was incident to the officer's undertaking to make a lawful arrest of defendant which was not abandoned by the officer but frustrated by defendant's unauthorized departure. In such circumstances, Officer Poisson's immediate resumption of pursuit of defendant was a continuation of the initial instant pursuit and remained such until Officer Poisson caught up with defendant in Arundel. *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *State v. Blankenship*, 99 Ariz. 60, 406 P.2d 729, 733 (1965). Cf. *Jackson v. Superior Court in and for Merced County*, 98 Cal.App.2d 183, 219 P.2d 879, 883 (1950); *Smith v. State*, 228 Miss. 476, 87 So.2d 917, 919 (1956).

The arrest in Arundel being lawful, defendant had no right to resist it by committing a battery upon arresting Officer Poisson.

The entry is:

Appeal sustained as it relates to the judgment of conviction for "Speeding"; appeal denied as it relates to the judgment of conviction for "Failure to Stop for a Police Officer" and the judgment of conviction for "Assault on a Police Officer."

All Justices concurring.

---

8. See n. 5, supra.