STATE OF CONNECTICUT *v.* BEN CARR

FILE No. CR 6-10422

STATE OF CONNECTICUT *v.* WILLIAM BARRON

FILE No. CR 6-10397

STATE OF CONNECTICUT *v.* MELVIN DANIELS

FILE No. CR 6-10423

APPELLATE DIVISION OF THE CIRCUIT COURT

Argued March 15—decided June 28, 1963

*Earl I. Williams,* of New Haven, for the appellants (defendants).

*Joseph B. Clark,* assistant prosecuting attorney, for the appellee (state).

KOSICKI, J. All of these cases were tried together, and for the convenience of the parties the appeals from the judgments rendered have been combined. Defendant Carr was convicted for (1) keeping a gaming house and (2) gaming, both offenses being in violation of § 53-273 of the General Statutes.[1] Defendants Barron and Daniels were found guilty of gaming in violation of the same statute.

Ben Carr owned and operated a barbershop at 148 Dixwell Avenue in New Haven. The closing hours of the shop were 6 p.m. during the week and 7 p.m. on Saturday. On Friday, August 3,

---

[1] "Sec. 53-273. GAMING HOUSE; KEEPERS. Any person who keeps a place resorted to for the purpose of gaming, or which is reputed to be a gaming house or place frequented for the purposes of gaming, or engages in playing at any game for any valuable thing or resides in or frequents such place for such purposes, shall be fined not more than one hundred dollars or imprisoned not more than six months or both."

1962, at about 10:30 p.m., Buffaloe, an officer of the New Haven police force, while patrolling his beat observed that the lights were on in the barbershop. He went to the rear of the building to investigate. At the back of the shop was an exhaust fan which was off. Through this opening the officer heard dice striking against a board. He also heard the placing of wagers in amounts of 75 cents and $2. There was an open transom over the rear door of the premises. Through the transom the officer saw a dice game in progress in which all three of the defendants were engaged. Defendants Barron and Daniels were each observed holding several $1 bills. Buffaloe was at the transom and about the premises, in the vicinity of the barbershop, for one hour and thirty-five minutes. He then left to summon assistance. Other officers soon arrived in response to his request. One of them, Hedge, arrested defendant Carr outside the premises while Carr was running toward the rear of the shop. The front door to the barbershop was locked. Between the front part of the shop, which was lighted, and the rear, where the dice game had been observed, was a partition which was then closed. The police officers forced the front door and as they entered they announced that everyone on the premises was under arrest. Defendants Barron and Daniels emerged from the back room and were placed under arrest. The defendants and the premises were searched. A pair of dice was found on defendant Daniels. A second pair was found in a bag on a stove in the rear room. The police had neither a search warrant for the premises nor an arrest warrant for any of the defendants.

The foregoing facts are not in dispute. The court took judicial notice of prior convictions of the defendant Carr for keeping a gaming house and gaming at that location and heard evidence of the reputation of the barbershop as a gaming house.

None of the defendants testified. All were found guilty as charged.

The assignment of errors in each appeal is specific in its claims of illegal search and unlawful arrest in violation of article first, §§ 8 and 9, of the constitution of Connecticut and the fourth, fifth and fourteenth amendments to the constitution of the United States. Although each appeal is also predicated on the general assignment that the court erred in concluding on all the evidence that the defendants were guilty beyond a reasonable doubt, this assignment was not pursued separately in brief or argument, and we need not consider it apart from the errors specifically assigned. The finding of facts, summarized above, to which no exception has been taken, and the evidence which we have examined amply support the finding of guilt, except as this finding may be affected by the introduction of evidence obtained through a search deemed illegal under the pertinent provisions of the state and federal constitutions.

We cannot refrain from pointing out that all the assignments of error except that relating to the ultimate finding of guilt, which we have already considered, have been presented to us in plain disregard of our rules. They have been drawn as abstract propositions of law and are not directed to any ruling on evidence or other rulings made in the course of trial. See Cir. Ct. Rule 7.29.1 (4), (5).

It is claimed as to all defendants that the court erroneously admitted testimony by Buffaloe as to what he observed through the transom and heard outside the rear door of the barbershop. If this testimony was improperly admitted, then such other evidence as was introduced would have been insufficient to sustain the conviction of the defend-

ants on the charge of gaming common to all the informations. Mainly, it is the contention of each of the defendants that evidence of gaming was obtained by Buffaloe's intrusion on the privacy guaranteed the defendants under the constitutional provisions referred to and was the result of an illegal search, and that the arrest was consequently unlawful. We are not concerned here with the seizure of dice which followed a search of the premises and the persons of the defendants. The dice evidently were not put in evidence, and no other property or effects were taken for use as evidence.

Specifically, the defendants claim that the presence of the officer in the alley and at the rear of the premises was unlawful and was solely for the purpose of obtaining information concerning the commission of crime; that, except for such invasion of the premises exterior to the barbershop, there could be no reasonable ground for the warrantless entry into and search of the barbershop and the arrest and search of the defendants. The defendants, without distinguishing the difference in the constitutional rights which each of them may assert individually, place their reliance on such cases as *McDonald* v. *United States,* 335 U.S. 451, and *Brock* v. *United States,* 223 F.2d 681 (5th Cir.). In the *McDonald* case, police officers had surreptitiously entered through a window of a rooming house into the landlady's premises, and one of the officers, looking through a transom into a room of which McDonald was a tenant, saw the petitioners engaged in activity having to do with the numbers game. Numbers slips, money and adding machines were in plain view. The officers had neither an arrest nor a search warrant. They demanded entry, were admitted, arrested the petitioners and seized the materials described. Conviction was reversed on the ground that the search and seizure were unreasonable and violative of the

constitutional rights of McDonald and that the evidence seized should have been suppressed. In a dissenting opinion, the chief justice and two justices, of the eight justices participating in the case, took the view that the arrest without a warrant was valid because it was for a crime committed in the presence of the arresting officer, and consequently the seizure of the instruments of the crime, which then were in plain sight, was also lawful; there having been no search, no issue arose as to the need of a search warrant. In the *Brock* case, incriminating statements obtained from the appellant while he was asleep and incriminating papers seized upon his arrest—both the arrest and search being without a warrant—were held to have been erroneously admitted in evidence because of the violation of the rights of the appellant under the fourth and fifth amendments to the federal constitution.

Neither of these cases is authority for the general proposition that evidence visually obtained by looking through a window, as in this case and under the circumstances here present, is inadmissible to prove that a crime was committed. In each of the cited cases, the evidence was held inadmissible because of an entry on and search of premises without a warrant when a warrant was obtainable, and the entry was for the purpose of making a search, the arrest being used as an excuse for the warrantless search. *McDonald* v. *United States,* supra, 454, 458; *Brock* v. *United States,* supra, 685; see also such cases as *Trupiano* v. *United States,* 334 U.S. 699, 703, 706, 708; *United States* v. *Lefkowitz,* 285 U.S. 452, 467; *McKnight* v. *United States,* 183 F.2d 977, 978 (D.C. Cir.); *Accarino* v. *United States,* 179 F.2d 456, 457 (D.C. Cir.). It is true that in the *Brock* case (p. 685) there is sweeping language that "standing on a man's premises and looking in his bedroom window is a violation of his 'right to be let alone' as

guaranteed by the Fourth Amendment." The decision, however, rests not on the admissibility of evidence obtained by visual observation but of evidence gained by questioning the accused in his sleep and by an illegal search and seizure of papers of evidentiary value leading to his conviction.

As to defendants Barron and Daniels, no claim can be made that their right to privacy was invaded in violation of their rights under the fourth amendment to the federal constitution and article first, § 8, of the state constitution. At most, their position was that of guests of Carr and therefore they were not within the orbit of the constitutional provisions referred to, either as to the information obtained by looking through the transom, or as to the warrantless entry on the premises, or as to the subsequent arrest and search. *McDonald* v. *United States,* 335 U.S. 451, 456, 461; *Trupiano* v. *United States,* 334 U.S. 699, 704. The testimony of the officers established a prima facie case which, in the absence of any refutation by these two defendants, was sufficient to sustain a conviction on the charge of gaming. The arrest of the defendants was not invalid because of the forced entry through the front door of the barbershop without a warrant. It was made as a consequence of a criminal act committed in the plain view of one of the arresting officers, and no warrant was necessary. General Statutes § 6-49; *State* v. *DelVecchio,* 149 Conn. 567, 574; *State* v. *Davis,* 24 Conn. Sup. 22, 31. No constitutional rights of defendants Barron and Daniels were infringed inasmuch as the forced entry was not on their premises; and defendant Carr, who was then outside of his barbershop and aware of what was taking place, instead of protesting the entry, ran in the opposite direction until apprehended.

All of the defendants claim that, in any event, the entry was illegal because the officers failed to make

known the cause of their demand for entry before prying open the locked door. It was held in *Miller* v. *United States,* 357 U.S. 301, 309: "The rule [pertaining to forced entry] seems to require notice in the form of an express announcement by the officers of their purpose of demanding admission." This rule, derived from common law, finds statutory recognition in a majority of states and the federal jurisdiction. Id., 308 n.8. The lawfulness of the arrest in this case must be determined by reference to state law. *United States* v. *Di Re,* 332 U.S. 581, 589. In Connecticut, neither by statute nor at common law is strict and uniform compliance with this rule required. Such an entry may be made without notice under certain circumstances; for example, when the announcement of the purpose of the entry would imperil the safety or life of the person otherwise entering justifiably. *Read* v. *Case,* 4 Conn. 166, 170. It would appear that in the present case the owner of the barbershop was not on the premises and this fact was known to the officers and to all of the defendants. The barbershop was lighted; the partition separating the shop proper from the place where the dice game had been observed was closed; there was imminent the opportunity for the defendants' escape; and it was not unreasonable for the officers to suppose that a demand would have been impractical and useless and was unlikely to be heard through the two closed doors. Under the circumstances, we cannot hold as a matter of law that failure on the part of the officers to announce the purpose of their demand for admission before entering forcibly made the arrest of Barron and Daniels unlawful. See Restatement, 1 Torts § 206, and such cases as *Williams* v. *United States,* 273 F.2d 781, 793 (9th Cir.); *Leahy* v. *United States,* 272 F.2d 487, 491 (9th Cir.); *People* v. *Maddox,* 46 Cal. 2d 301, 305; *People* v. *Morris,* 157 Cal. App. 2d 81, 84;

*People* v. *Shelton,* 151 Cal. App. 2d 587, 588; *State* v. *Smith,* 37 N.J. 481, 499.

On behalf of defendant Carr it is further claimed that (1) the evidence of the officer's listening at the rear door and looking through the transom was obtained in violation of Carr's right to privacy under the constitutional provisions referred to above and could not be used against him; and (2) his arrest was consequently illegal. His contention is predicated on the premise that the officer was unlawfully present on defendant Carr's premises for the purpose of obtaining information on whether a crime was being committed and this constituted an unreasonable intrusion on his privacy under the rule in such cases as *McDonald* v. *United States* and *Brock* v. *United States,* supra. We cannot accept the assumed premise as true. Buffaloe was engaged in patrolling the neighborhood where Carr's barbershop was located. It was his duty to investigate any suspicious circumstance which might come to his notice and be indicative of unlawful acts. The fact that the barbershop was illuminated at a late hour at night, long after the normal closing hour, was enough to alert the officer to the need for an investigation of the premises. It is common knowledge that police officers patrolling commercial districts customarily check the doors of business establishments and are on the lookout for unusual conditions which might constitute a threat to persons or property. Buffaloe's presence at the rear of the barbershop was justifiable, and the information gained by him was not inadmissible as being an invasion of defendant Carr's right to privacy. The fact that the arrest of Carr occurred approximately one hour after the officer first saw him through the transom did not make it unlawful. It was necessary for Buffaloe to await the arrival of other officers to assist him in apprehending all the defendants,

and the arrest by Hedge was on speedy information within the requirements of § 6-49 of the General Statutes.

The remaining ground of appeal in Carr's case relates to his conviction for the offense of keeping a gaming house. The state was required to prove that the premises where the dice game occurred were "a place resorted to for the purpose of gaming, or which . . . [was] reputed to be a gaming house or place frequented for the purposes of gaming." § 53-273. Evidence of general reputation was offered through Buffaloe, who had lived in the neighborhood for ten years and knew of the premises known as 148 Dixwell Avenue. He was familiar with the reputation the shop had in the neighborhood. The court heard testimony concerning prior arrests of Carr for gaming and keeping a gaming house at that location and took judicial notice of the resulting convictions. There was sufficient evidence of the real character of the place for the court reasonably to conclude, in the absence of any evidence to the contrary, that Carr was guilty of keeping a gaming house. See *State* v. *Flint*, 63 Conn. 248, 250; *State* v. *Anderson*, 82 Conn. 111, 114; *State* v. *Gaetano*, 96 Conn. 306, 318.

There was no claim in the brief, nor was it pointed out in argument, that there was an infringement of the rights of the defendants under the fifth amendment; therefore we consider that assignment of error waived.

There is no error.

In this opinion PRUYN and LEVINE, Js., concurred.