706 P.2d 516

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Charles E. LYON, Defendant-Appellant.**

**No. 8215.**

Court of Appeals of New Mexico.

Aug. 1, 1985.

Certiorari Denied Sept. 13, 1985.

306

Armand T. Carian, Albuquerque, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

Convicted of driving under the influence (DWI) by a metropolitan court jury, defendant appealed to the district court for a trial de novo, where the district court, without a jury, convicted defendant. He appeals that conviction, raising two issues:

1. Whether the district court erred in refusing to suppress the results of defendant's breath alcohol test when defendant's warrantless misdemeanor arrest was made by an officer who did not observe defendant driving under the influence; and

2. Whether the district court improperly denied defendant a trial by jury.

We affirm.

### 1. The warrantless misdemeanor arrest.

Defendant argues that the results of his breath alcohol test should have been suppressed because: (1) there was insufficient basis for Officer Schultz to make an investigatory stop of defendant's vehicle; and (2) the misdemeanor for which defendant was arrested was not committed in the presence of Officer Tellez, the arresting officer. We first set forth the facts giving rise to these contentions.

Shortly before midnight on April 25, 1984, defendant drove his vehicle in the Coronado Shopping Center parking lot near the Sears' Automotive Center, where the Albuquerque police had positioned their "Batmobile" for convenience. Twice defendant drove close to the Batmobile in which Officer Schultz was located. On both occasions Schultz observed a beer bottle between defendant's legs.

Schultz stopped defendant and cited him for an open container violation under an Albuquerque ordinance. Because he could not transport defendant in the canine unit vehicle and expose defendant to danger from the dog, and also because he needed to remain free to service the canine unit, Schultz radioed for assistance. Officer Tellez with the DWI unit responded. After explaining the situation to Tellez, Schultz remained, observing two of the field sobrie-ty tests conducted by Tellez, which defendant failed. Schultz also watched defendant's passenger who was acting "smart-alecky, cocky," and "loud," because of his concern for "officer safety."

After conducting the field sobriety tests, Tellez arrested defendant in the presence of Schultz, and transported defendant to the Batmobile for a breath alcohol test, while Schultz helped park defendant's car. Schultz observed the administration of the breath alcohol test, which defendant also failed.

### (a) The investigatory stop.

■ The stop which Officer Schultz made was an investigatory stop; therefore, probable cause for stopping the car is not at issue. *State v. Galvan*, 90 N.M. 129, 560 P.2d 550 (Ct.App.1977). The inquiry is whether there were appropriate circumstances which would justify the stop. "Appropriate circumstances" is a reasonable suspicion that the laws have been violated. "Reasonable suspicion" is judged by an objective standard: would the facts and inferences available to the officer warrant the officer, as a person of reasonable caution, to believe the action taken was appropriate. The officer must be able to articulate specific facts and reasonable inferences drawn from those facts. *Id.*

■ On appeal, the state argues that the investigatory stop was justified because Officer Schultz could have had a reasonable suspicion that the defendant was driving while intoxicated. Defendant, on the other hand, argues a lack of reasonable grounds to stop him in a private parking lot because the open container charge (dismissed in metropolitan court) applied only to public streets. Where there are reasonable grounds supporting a warrantless arrest for the commission of a misdemeanor, the arrest is not invalidated because the officer gave the wrong reasons for the arrest; the proper misdemeanor charge must, however, be known to the officer at the time of the arrest. *State v. Luna*, 93 N.M. 773, 606 P.2d 183 (1980). A review of

the evidence shows that Officer Schultz was justified in making an investigatory stop.

■ Defendant was seen driving into the Sears parking lot shortly before midnight. Defendant twice drove close to the Batmobile in which Officer Schultz was positioned. Each time the defendant was observed driving by, he had a beer bottle between his legs. At that hour only the police vehicles and the defendant were in the parking lot. Officer Schultz paid special attention to defendant's vehicle under the circumstances because individuals would occasionally approach the Batmobile to cause trouble. After driving close to the Batmobile twice, defendant drove around the Sears Automotive Center. The Automotive Center was closed. Defendant continued driving around to the Sears store, which was also closed. Officer Schultz then stopped defendant. At that point, the officer observed that defendant's speech was slurred, his eyes were watery and bloodshot and there was a moderate odor of alcohol coming from his person. The foregoing evidence was sufficient to induce a reasonably cautious person to believe that an investigatory stop of the defendant's vehicle was appropriate.

### (b) The requirement of presence.

■ The misdemeanor arrest rule in New Mexico provides that a police officer may make a warrantless arrest for a misdemeanor offense if the misdemeanor is committed in the officer's presence. *Luna; City of Roswell v. Mayer,* 78 N.M. 533, 433 P.2d 757 (1967); *Cave v. Cooley,* 48 N.M. 478, 152 P.2d 886 (1944). A warrantless arrest may also be made under other circumstances. *See* NMSA 1978, § 66–8–125.

In *State v. Calanche,* 91 N.M. 390, 574 P.2d 1018 (Ct.App.1978) this court upheld a warrantless arrest made by a police officer pursuant to NMSA 1953, Section 64–22–8.2, (2d.Repl.Vol.9, pt.2) (now Section 66–8–125(A)(1) of a person at the scene of the accident, either at the scene or at another place, if the arrest is made with reasonable promptness. Section 66–8–125 does not apply to the case before us because there was no motor vehicle accident.

The state, in this case, acknowledges that arresting Officer Tellez did not actually observe the defendant driving his vehicle but argues that the officer in whose presence the offense was committed participated in the arrest to such a degree that the requirements of the rule were satisfied even though another officer technically placed defendant under arrest. In the alternative, the state urges this court to adopt the "police-team" qualification of the presence requirement. Under this qualification, a member of the police-team may arrest for a misdemeanor committed in the presence of another member of the police-team when their collective perceptions are combined to satisfy the presence requirement. *Henry v. Commissioner of Public Safety,* 357 N.W.2d 121 (Minn.App.1984). To accept the state's contention that Officer Schultz' participation was of such degree to satisfy the presence requirement, argues in effect for the adoption of the "police-team" qualification. Accordingly, we examine this qualification.

■The purpose of the presence requirement is to prevent warrantless arrests based on information from third parties. *State v. Jensen,* 351 N.W.2d 29 (Minn.App. 1984). Courts in other jurisdictions have developed the police-team qualification to the presence requirement by permitting officers working together to combine their collective perceptions so that the requirement is deemed satisfied even though the arresting officer does not witness all the elements of the offense. The arresting officer is viewed as the most reliable informant, but is not considered a third person. *Id.*

Recently, some states have eliminated the presence requirement from their arrest statutes by removing the felony-misdemeanor distinction. The courts in these states have stressed that there is sometimes little correlation between the designation of a crime as either a felony or a misdemeanor and its heinousness or the

attendant severity of its punishment. Prior decisions have eliminated the presence requirement for felonies as long as there was probable cause for the arrest. *See, e.g., State v. Deltenre,* 77 N.M. 497, 424 P.2d 782 (1966), *cert. denied,* 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967). Therefore, the courts felt justified in extending the police-team qualification in order to legalize misdemeanor arrests. Comment, *The Presence Requirement and the "Police-Team" Rule in Arrest for Misdemeanors,* 26 Wash. & Lee L.Rev. 119 (1969); *Robinson v. State,* 4 Md.App. 515, 243 A.2d 879 (1968).

Some states have retained the felony-misdemeanor distinction in their statutes, but allow an arrest without the element of presence, if the officer has reasonable grounds for believing that a misdemeanor has been committed. *Howes v. State,* 503 P.2d 1055 (Alaska 1972). Other states have viewed the qualification as a legal fiction based on the theory that a team is one body, i.e., what is done in the presence of one is done in the presence of all. The use of police radio supports this fiction by creating a proximity of awareness, purpose, and reliance between those officers in communication. *See Comment; Robinson; Prosser v. Parsons,* 245 S.C. 493, 141 S.E.2d 342 (1965). Still, other states have adopted this qualification on the basis that it does not infringe on the substantial rights of the defendant. *State v. Standish,* 116 N.H. 483, 363 A.2d 404 (1976).

While elimination of the felony-misdemeanor distinction may merit consideration, this court must follow rules adopted by the supreme court. *Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973). Nevertheless, we do no violence to those rules to expand on the requirement of "in the presence of", particularly in light of recent developments in this area of the law, present day communication capabilities, and coordinated police methods.

Given the mobility of today's society, as well as the availability of transportation, criminals can quickly leave the scene of the crime. It is often impossible for one officer to chase a suspect for many miles, especially in urban areas, and the immediate cooperation of other police is necessary to prevent escape. *See Comment; Robinson.* A warrant in most cases cannot issue because it must be in the name of a known person or it must specifically identify the suspect. To adhere strictly to the presence requirement in these situations would not only shackle police efficiency and the use of modern communications equipment, but also exalt form over substance. In *State v. Cook,* 194 Kan. 495, 399 P.2d 835, 839 (1965), where a misdemeanor was deemed to have occurred in the presence of an officer on the ground, who kept in constant radio contact with officers in an airplane, the court said:

> The law does not blindly close its eyes to reason. While holding fast to basic truths, it acknowledges the inevitability of change and seeks to adapt itself to new conditions. For us to hold that [the officer's] arrest of the defendant was illegal would, under the conditions prevailing in this case, violate common sense.

■ Adopting the reasoning of *Robinson,* we think it a proper extension of the rationale of the misdemeanor arrest rule first adopted in *Cave v. Cooley,* that when a misdemeanor is committed in the presence of a police officer and information of such is promptly placed on the police radio or otherwise communicated and a description of the misdemeanant given, the arrest of the misdemeanant by another police officer within a reasonable time of receipt of the information is valid. *See State v. Calanche* (warrantless arrest must be made with reasonable promptness).

■ We, therefore, hold defendant's arrest valid, and the breath alcohol test results flowing from that arrest, *State v. Richerson,* 87 N.M. 437, 535 P.2d 644 (Ct. App.1975), were properly received in evidence.

## 2. The right to trial by jury.

In metropolitan court, defendant pled not guilty and was then tried before a jury.

On motion of the state, the open container charge was dismissed. The jury convicted defendant of driving while under the influence of intoxicating liquor, a second or subsequent offense. NMSA 1978, § 66–8–102 (Cum.Supp.1984). Defendant then appealed his conviction to district court. *See,* NMSA 1978, § 34–8A–6 (Repl.Pamp.1981).

In district court, defendant filed a formal jury demand. The district court denied defendant's request for a jury trial, concluding that it would reduce the offense charged to a DWI first offense. (The state determined that it could not prove prior valid convictions for DWI and so informed defendant and the district court.)

Because he was convicted of DWI second or subsequent offense in metropolitan court, defendant contends that on his de novo appeal in district court, he could have only been tried for DWI second offense and not DWI first offense. Since a charge of DWI second would have exposed him to a term of confinement of up to one year, defendant claims a right to trial by a jury. *See State v. Haar,* 94 N.M. 539, 612 P.2d 1350 (Ct.App.1980) (hereinafter, *Haar* 94). By reducing the charge to DWI first which only carries a maximum penalty of 90 days imprisonment, defendant asserts a denial of his right to a jury trial.

■ Whether defendant was entitled to a jury trial, depends upon the authority of the district court. A district court in trying a case de novo, which has been appealed from a court of limited jurisdiction, has only such authority as has been authorized by statute. *State v. Haar,* 100 N.M. 609, 673 P.2d 1342 (Ct.App.1983) (hereinafter, *Haar* 100). In a de novo appeal from both municipal and magistrate courts, a district court is statutorily empowered to impose a penalty which is greater or lesser than the penalty imposed by those lower courts. *See City of Farmington v. Sandoval,* 90 N.M. 246, 561 P.2d 945 (Ct.App.1977) (NMSA 1978, § 35–15–8, municipal courts); *Haar* 94; (NMSA 1978, § 35–13–2 (Cum.Supp.1984), magistrate courts). No such statutory authority ex-

ists in a de novo appeal from metropolitan court. *See Haar* 100; (§ 34–8A–6).

■ Since the legislature has not amended the metropolitan court statute, the district court in the present case lacked authority to impose a sentence greater than that imposed by the metropolitan court. The metropolitan court sentenced defendant to 90 days in jail, suspended 60 days of the sentence, and placed defendant on probation. Following the trial de novo, the district court imposed the exact same sentence. Defendant, on his de novo appeal, was never exposed to a term of confinement of over six months; defendant was not entitled to a jury trial. *Haar* 94.

Although defendant was not entitled to a jury trial on his de novo appeal, the question remains as to whether he was entitled to appeal and be tried *only* as to DWI second. As has been shown, the district court was not empowered to change the *sentence* imposed by the metropolitan court; however, can the district court reduce the *charge?* This is a question of first impression which appears to be jurisdictional in nature. *See Haar* 100 (because the district court has only limited jurisdiction on appeals from magistrate court, there must be express statutory authorization for every action taken by a district judge in de novo appeals).

The essence of defendant's contention is that he cannot be tried on a different charge than what he was convicted of in metropolitan court. The defendant makes no specific argument nor does he cite any authority to support it. *See* NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 501(a)(4) (Repl.Pamp.1983). Nevertheless, NMSA 1978, Metro.Rule 39(a) (Repl.Pamp. 1981) supports the defendant in part: "The court may at any time prior to a verdict cause the complaint or citation to be amended in respect to any such defect * * * if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." There was no amendment made by the state. *See also City of Mexico v. Merline,* 596 S.W.2d 475 (Mo.App.1980) (after an appeal has

been taken from the judgment of a municipal court, a new or different charge cannot be filed by way of an amendment to the original information, but the information may be amended to clarify the charge, or to charge a lesser included offense); *State v. Mansfield*, 576 P.2d 1276 (Utah 1978).

The state contends that DWI second is not a crime distinct from DWI first; rather, DWI second relates to the enhancement of the defendant's sentence for DWI first. We agree. Section 66–8–102(E) provides for sentencing consequences upon a second or subsequent conviction of DWI. *See State v. Ulibarri*, 96 N.M. 511, 632 P.2d 746 (Ct.App.1981). The enhancement sentence is not an element of the conviction; rather, it is a consequence of the prior DWI conviction. Further, the enhancement provision does not create a new class of crimes; it only creates new consequences for the criminal conduct. *State v. Barreras*, 88 N.M. 52, 536 P.2d 1108 (Ct.App.1975) (aggravated battery involving firearm); *see also People v. Leonowicz*, 134 Mich.App. 152, 350 N.W.2d 770 (1984) (DWI conviction).

The fact that DWI second relates only to enhancement is important in this case because, when the state charged the defendant with DWI second in metropolitan court, defendant was put on notice that the state would seek enhancement of his sentence. It did not affect the charge itself. Defendant must be given notice of the crime charged so as to enable him to prepare his defense to that crime. *Barreras.* On the appeal de novo, defendant was given notice that enhancement would not be sought by the state. The state was not required to seek enhancement of the defendant's sentence. *State v. Cruz*, 82 N.M. 522, 484 P.2d 364 (Ct.App.1971). Since the defendant was given notice to prepare his case and because the defendant suffered no prejudice, the trial court's ruling on this issue is affirmed.

AFFIRMED.

IT IS SO ORDERED.

DONNELLY, C.J., and WOOD, J., concur.