709 P.2d 194

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Willie WARREN, Defendant-Appellant.**

**No. 8531.**

Court of Appeals of New Mexico.

Oct. 17, 1985.

Christian Eaby, Christian Eaby & Associates, Albuquerque, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Bill Primm, Ass't Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

Following denial of defendant's motion to suppress physical evidence, the parties stipulated to the facts and to defendant's right to appeal the order denying his motion. Pursuant to the stipulation, defendant was convicted of possession of cocaine after a bench trial. He now appeals from the judgment, sentence and denial of his motion to suppress.

**ISSUES:**

Defendant raises the following issues on appeal:

1) Whether the arresting officer, Lt. Casey, had probable cause to believe that defendant was committing a misdemeanor in the officer's presence;

2) If Lt. Casey had probable cause to arrest defendant, whether the officer delayed unreasonably in executing the arrest;

3) Whether the misdemeanor arrest was a pretext for a warrantless search for drugs; and

4) If the arrest of defendant was lawful, whether the search of his personal belongings was unlawful.

A fifth issue raised in the docketing statement but not briefed is deemed abandoned. *State v. McGill,* 89 N.M. 631, 556 P.2d 39 (Ct.App.1976).

Because the first two issues are dispositive and require reversal, we do not reach the remaining issues. We hold that because the misdemeanor of drinking in public was not committed in the presence of the arresting officer, a warrantless arrest could not be made, and, even if it could, an unreasonable period of time elapsed between the commission of the misdemeanor and the execution of the arrest.

**FACTS:**

Several days before defendant's arrest, the Albuquerque Police Department received a tip from a confidential informant that a large black man, driving a county service vehicle, had been selling drugs in Dennis Chavez Park. The police placed the park under surveillance and identified de-

474

fendant as matching the informant's description. Two police officers, Lt. Casey and Officer Wadley, followed defendant for several hours on September 13 or 14, 1984, but observed no criminal activity. The police apparently then ceased their investigation; however, on the morning of September 18, 1984, Lt. Casey telephoned Officer Ramkowski to inform him of defendant's name.

On September 18, 1984, Officer Ramkowski was assigned by Lt. Casey to conduct a surveillance of Dennis Chavez Park. At around 10:30 a.m., he observed the defendant, driving a county road service vehicle, arrive at the park. The officer then watched the defendant get out of the vehicle and drink a beer with another individual who supplied the beer to the defendant. Drinking in public is a misdemeanor, in violation of an Albuquerque city ordinance. Officer Ramkowski recognized the defendant.

Upon viewing the defendant drinking the beer in public, Officer Ramkowski telephoned Lt. Casey to inform Casey that defendant was drinking in public. Testimony conflicted as to why Officer Ramkowski did not arrest the defendant on the spot. Ramkowski testified that he did not arrest defendant because he "guessed" that the police were going to watch for defendant to do something else, namely, sell narcotics. Lt. Casey, however, testified that Ramkowski did not arrest the defendant because Ramkowski was not in uniform.

Following receipt of Officer Ramkowski's telephone call, Lt. Casey said that he drove to the park, stopped upon the shoulder of the road adjoining the park and observed the defendant drinking from an off-colored or smoke-colored glass container. He could not identify what defendant was drinking. (Conversely, Officer Ramkowski testified that, to the best of his knowledge, Lt. Casey had not gone to the park.) After observing the defendant drinking from the container, Lt. Casey did not arrest him but proceeded to the county road department, one and one-half miles from the park. Casey's decision not to

arrest the defendant immediately was prompted by his concern over what to do with the county vehicle which the defendant was driving. The vehicle, which carries fuels, is used for heavy equipment servicing. When county machinery runs out of gasoline, this "huge" vehicle is used to refuel the machinery. Casey testified that he did not want to take responsibility for the vehicle, partly, at least, out of concern that the police department could be civilly accountable for the vehicle or articles in the vehicle. Rather, Casey preferred to wait for the defendant to return with the vehicle to the county yard or to enlist the aid of the county supervisor.

In the meantime, the defendant left the park, followed by Officer Ramkowski, and travelled to an apartment complex where he left the vehicle, entered an apartment, and remained for approximately half an hour. Defendant left the apartment at approximately 12:15 p.m. to return to the county yards where he arrived at around 12:20 p.m. Ramkowski followed the defendant back to the county yards where Ramkowski's surveillance ended. (Lt. Casey, on the other hand, testified that the defendant arrived at the county yards at about 2:00 p.m.)

Lt. Casey arrested the defendant at the county yards at about 2:15–2:30 p.m. Officer Ramkowski was not directly involved in the arrest. The defendant was outside of the county vehicle when he was arrested. He was approximately 6–7 feet away from the vehicle when he was handcuffed. The defendant's person as well as the vehicle was searched. An "Igloo" cooler was removed from the vehicle and placed on the hood of a law enforcement vehicle, approximately 5–6 feet away from the defendant. The officers began "inventorying" and discovered a quantity of marijuana, some controlled substances, and a small amount of cocaine. Lt. Casey justified the search on the bases of a valid search incident to a lawful arrest as well as a departmental safeguard due to the Albuquerque Police Department's being sued for failure to account properly for the safeguard of prisoners' belongings.

**PROCEEDINGS BELOW:**

Defendant moved to suppress the evidence on the basis of an unlawful search. The court found the following:

1) The delay between the observed misdemeanor and arrest was reasonable in light of the attending circumstances, including: Officer Ramkowski was not in uniform and assigned to monitor the park generally; and an on-the-spot arrest would have necessitated seizure of a "unique, important County Government vehicle," the destination of which to the county yards was known to the officers;

2) The arrest was valid and proper;

3) The searched area was within the area accessible to the defendant; therefore, the search was a reasonable search incident to arrest, the scope of which being within permissible limits;

4) The search of the cooler was reasonable, partly because the officers could reasonably expect to find evidence of the misdemeanor, beer, within the cooler;

5) The search, arrest, and seizure were done under the exclusive supervision of Lt. Casey whose reasons and motives were proper. The understandings of assisting officers were irrelevant; and

6) The removal of personal items was reasonable, due to custodial concerns, with the court finding a similarity to automobile inventory searches.

On appeal, a trial court's denial of a motion to suppress will not be disturbed if supported by substantial evidence, unless it also appears that the determination was erroneously premised. *State v. Boeglin*, 100 N.M. 127, 666 P.2d 1274 (Ct.App.1983). We view the evidence in a light most favorable to the trial court's ruling, indulging all inferences in support of that ruling, and disregarding all evidence to the contrary. *Id.; State v. Rivera*, 85 N.M. 723, 516 P.2d 694 (Ct.App.1973).

**DISCUSSION:**

**ISSUE I: WARRANTLESS MISDEMEANOR ARREST.**

**A. *The Presence Requirement***

The rule in New Mexico is that a police officer may make a warrantless misdemeanor arrest if the misdemeanor is committed in the officer's presence. *Cave v. Cooley*, 48 N.M. 478, 152 P.2d 886 (1944); *City of Roswell v. Mayer*, 78 N.M. 533, 433 P.2d 757 (1967). The arrest must be based upon facts known to the officer at the time of the arrest. *State v. Luna*, 93 N.M. 773, 606 P.2d 183 (1980).

The defendant argues that Lt. Casey had no probable cause to believe that the defendant was drinking beer in a public place in Casey's presence. Casey only observed from a distance the defendant drinking from an off-colored or smoked-colored container. The state argues, however, that the combination of Officer Ramkowski's telephone call to Lt. Casey, informing Casey that the defendant was drinking beer in the park, and Lt. Casey's observation of the defendant drinking in the park from an off-colored or smoke-colored container gave Lt. Casey probable cause to believe that the defendant was committing a misdemeanor in the lieutenant's presence. The first inquiry, therefore, is to determine what standard of sensory perception is necessary to satisfy the "in presence" requirement.

Some jurisdictions have concluded that the felony/misdemeanor distinction is outmoded and have eliminated the "in presence" requirement for warrantless misdemeanor arrests. *See,* Comment, *The Presence Requirement and the "Police Team" Rule in Arrest for Misdemeanors*, 26 Wash. & Lee L.Rev. 122 (1969). Other jurisdictions, however, strictly adhere to the distinction requiring that, based upon his or her sensory perceptions, an officer must be able to testify to acts comprising each material element of the misdemeanor before a misdemeanor can be said to have been committed in the officer's presence. *See, e.g., In re Alonzo C.*, 87 Cal.App.3d 707, 151 Cal.Rptr. 192 (1978) (officer smells odor of paint on defendant's breath and sees traces of silver paint in defendant's nostrils but does not see defendant sniff the paint; therefore, misdemeanor was not

committed in officer's presence); *T.L.M. v. State*, 371 So.2d 688 (Fla.App.1979) (police receive call concerning juveniles creating disturbance in a hospital; police arrive, smell alcohol on juveniles' breaths and observe actions characteristic of being under the influence of alcohol but could not arrest juveniles because statute stipulated that public drunkenness must be accompanied by acts constituting public disturbance, and police witnessed no such disturbance); and *Raymer v. City of Tulsa*, 595 P.2d 810 (Okla.Crim.App.1979) (arresting officers observed prostitution solicitation but did not hear solicitation so warrantless arrest was unlawful).

New Mexico, in acknowledging the felony/misdemeanor dichotomy, recognizes the "in presence" requirement. *Cave v. Cooley.* Accordingly, the "probable cause" required to justify a warrantless misdemeanor arrest is considerably more specific than the probable cause necessary for a felony arrest. *Id.* This court recently ruled, however, that an arresting officer need not perceive through his or her senses each material element of the misdemeanor, but may combine the sensory perceptions with "reasonable inferences which may be legitimately drawn from the circumstantial evidence" to give rise to probable cause or reasonable suspicion that a misdemeanor had been committed in the officer's presence. *State v. Boone*, Ct.App.No. 8093 (Filed September 12, 1985).

In *Boone*, an officer on patrol was called at 11:10 p.m. to investigate a car with its lights out stopped in the middle of the road. Upon arriving at the scene, the officer talked to the defendant, detected the odor of alcohol, and noticed that the defendant's speech was "kind of slurred." The officer subsequently observed the defendant walking unsteadily. The officer administered a field sobriety test which, for the most part, the defendant failed. On these bases, the officer charged the defendant with driving while intoxicated (DWI).

This court ruled that even though the officer did not observe the defendant drive the vehicle, the misdemeanor occurred in the presence of the officer. *Id.* In reaching such a conclusion, this court reasoned that from facts and senses presently available to the officer, the officer could reasonably conclude that the defendant was driving while intoxicated. *Id.*

■ Applying the *Boone* standard to the case at bar, we conclude that Lt. Casey did not have probable cause or reasonable grounds to believe that the defendant was drinking in his presence. In *Boone*, the following indicia of driving while intoxicated were before the arresting officer: the car was stationary in the middle of the road with its lights off and its motor running; the defendant was in the driver's seat; the defendant spoke with slurred speech and smelled of alcohol; and finally, the defendant's walk was unsteady. On the other hand, in this case, Lt. Casey only observed from a distance the defendant drinking from an off-colored or smoke-colored container. If Casey could have identified the container as a beer bottle, it might have been reasonable to infer that the defendant was drinking in a public park, even if Casey had not seen the defendant actually take a drink. Because Casey did not identify the container as a beer bottle, however, it is difficult to conclude that a misdemeanor took place in Casey's presence. He observed no facts which were in themselves sufficiently indicative of a misdemeanor in the course of commission. *Miller v. State*, 462 P.2d 421 (Alaska 1969).

The next inquiry is what impact, if any, Officer Ramkowski's observation of the defendant actually drinking a beer in the park might have on satisfying the presence requirement. This discussion will involve an analysis of whether this court's recent adoption of the "police-team" qualification to the "in the presence of" requirement of the misdemeanor arrest rule applies in this case. *State v. Lyon*, 103 N.M. 305, 706 P.2d 516 (Ct.App.) (*cert. denied*, 103 N.M. 287, 705 P.2d 1138 (1985); *State v. Marquez*, 103 N.M. 265, 705 P.2d 170 (Ct.App. 1985).

## B. *"The Police-Team Qualification"*

In *State v. Lyon,* this court ruled that a misdemeanor need not be committed in the presence of the arresting officer if certain circumstances are met. First, the misdemeanor must be committed in the presence of a police officer. Second, that police officer must promptly communicate to other police officers via police radio or other communication device such information and a description of the misdemeanant. Third, the misdemeanant must be arrested within a reasonable time from the receipt of the information and description. *See also State v. Marquez, supra.*

Implicit in *Lyon* and *Marquez,* as well as cases from other jurisdictions which have adopted the "police-team qualification," are guidelines as to when the qualification should be applied. Generally, "police-team" cases fall into one of two categories: first, situations in which the police officer must call in assistance for such reasons as inherent danger or criminal flight and, second, situations involving cooperative police efforts.

*Marquez* falls within the first classification. In *Marquez,* the officer was assaulted by the defendant as the officer attempted to quell a fight between two women. While the officer responded to the fight, the defendant fled into a crowd. The officer then ordered a newly arriving officer to arrest the defendant. The second officer radioed to a third officer to arrest the defendant. Neither the second nor the third officer saw the assault. Neither officer knew the reason for the arrest. Therefore, in some situations, an officer may be simply outnumbered and require assistance. *Marquez.* In other circumstances, apprehension of an offender in flight necessitates that the police work as a team. *State v. Bryant,* 678 S.W.2d 480 (Tenn. Crim.App.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 967, 83 L.Ed.2d 971 (1985); *Robinson v. State,* 4 Md.App. 515, 243 A.2d 879 (1968). In both of these instances, the "team qualification" should satisfy the presence requirement of warrantless misdemeanor arrests. Such application is simply a legitimate response to the exigencies inherent in police work.

In applying this "assistance" justification for the police-team rule to our facts, it is clear that the defendant's situation did not merit calling in assistance. Officer Ramkowski was not outnumbered, and the defendant was not in flight. Officer Ramkowski testified that he did not arrest the defendant because he "guessed" that the police were waiting for the defendant to sell narcotics. Lt. Casey testified, on the other hand, that Officer Ramkowski did not execute the arrest because Ramkowski was not in uniform. *Cf.* NMSA 1978, § 66–8–124; *State v. Ray,* 91 N.M. 67, 570 P.2d 605 (Ct.App.1977). The trial court adopted Lt. Casey's rationale. In so doing, the trial court failed to apply the "in presence" requirement.

The second line of cases which adopt the "police team" qualification involve situations where police officers are working collectively. These cases usually involve traffic surveillance. *See, State v. Cook,* 194 Kan. 495, 399 P.2d 835 (1965) (aircraft surveillance of traffic with offenses radioed to earthbound officer); *State v. Coustenis,* 233 A.2d 449 (Del.Super.Ct.1967) (police officer takes radar reading; another officer executes arrest); *Henry v. Commissioner,* 357 N.W.2d 121 (Minn.App.1984) (one officer observed that the offender was intoxicated; another officer observed that the offender was speeding). For other cases "illustrative of collective police investigation, *see Prosser v. Parsons,* 245 S.C. 493, 141 S.E.2d 342 (1965) (approximately ten game wardens working together to apprehend night hunters); *Howes v. State,* 503 P.2d 1055 (Alaska 1972) (one officer described package containing candle with concealed hashish to arresting officer who observed defendants pick up package).

The link connecting these cases is that, in each of these cases, two or more officers are combining efforts in one investigation. In each case, the arresting officer relied upon information and observations made by other officers to establish the probable cause for his belief that an offense was being committed in his presence. *Howes v. State.* When the officers combined efforts for one investigation,

[a]n act taking place within view of one officer was in legal effect within the view of the other cooperating officers and, if the combination of acts committed within the view of the cooperating officers furnished probable cause for believing that an offense * * * was being committed in their presence, then the arrest was lawful.

*Prosser v. Parsons,* 245 S.C. at 500–501, 141 S.E.2d at 346.

■ The facts in our case do not indicate that Officer Ramkowski and Lt. Casey were participating in a cooperative investigation when Ramkowski observed the defendant drinking beer in the park. Lt. Casey had assigned Officer Ramkowski to observe the park for drug trafficking. Casey was at home, not on duty, when Ramkowski phoned Casey to inform the lieutenant that the defendant was drinking in the park. There were no indicia of a cooperative investigation. The crime was complete when Ramkowski observed defendant drinking in the park. Ramkowski had probable cause to arrest defendant. Lt. Casey's further observation of defendant added nothing to Ramkowski's investigation. There are no collective perceptions in this case.

We, therefore, hold that the police-team qualification to the presence requirement cannot be applied in this case. In the absence of some exigency or cooperative police effort, the police team exception probably should not be invoked. To randomly apply the exception would effectively emasculate the felony-misdemeanor distinction.

## ISSUE II: UNREASONABLE DELAY.

Even if we were to find that Lt. Casey had independent probable cause to believe that a misdemeanor was being committed in his presence or if we applied the "police-team" qualification, in order to affirm the trial court's ruling, we still must be able to find that a 2½–3 hour delay in effecting the arrest was reasonable. *State v. Calanche,* 91 N.M. 390, 574 P.2d 1018 (Ct. App.1978); *State v. Lyon,* 103 N.M. 305, 706 P.2d 516 (Ct.App.), *cert. denied,* 103 N.M. 287, 705 P.2d 1138 (1985). The state

acknowledges a two to three hour delay between the time Lt. Casey observed defendant in the park and the time of the arrest.

■ The general rule is that a warrantless misdemeanor arrest must be made at the time of the offense or within a reasonable time following the commission of the offense. *Smith v. State,* 228 Miss. 476, 87 So.2d 917 (1956). The issue of what is a reasonable delay is one of law. *Jackson v. Superior Court,* 98 Cal.App.2d 183, 219 P.2d 879 (1950); *see also* Annot., 58 A.L.R.2d 1056 (1958). In order to justify a delay in executing the arrest, the officer must show a continued attempt to make the arrest. *Jackson.* The officer may not postpone the arrest for any reason foreign to the arrest. *Id.*

In New Mexico, it is no different. In *State v. Calanche,* this court, ruled:

"It is a general rule that once an officer has the right to arrest without a warrant for a misdemeanor or breach of the peace committed in his presence he must do so as soon as he reasonably can, and if he delays for purposes disassociated with the arrest or for such a length of time as to necessarily indicate the interposition of other purposes, he cannot arrest without a warrant."

91 N.M. at 393, 574 P.2d at 1021, *quoting* Annot., 58 A.L.R.2d 1056 (1958).

■ Accordingly, the first inquiry is to determine when Lt. Casey reasonably could have arrested the defendant. Legitimate justifications for delaying the arrest are such exigencies as time elapsed in the pursuit of the offender or time spent summoning assistance. For example, in *Calanche,* this court upheld the reasonableness of a 2–3 hour delay in making an arrest when the officer was called upon to investigate a multiple-vehicle accident in which nineteen people were injured. For additional cases upholding the legitimacy of a delay, *see Schindelar v. Michand,* 411 F.2d 80 (10th Cir.), *cert. denied,* 396 U.S. 956, 90 S.Ct. 426, 24 L.Ed.2d 420 (1969) (forty-five minute delay permissible when necessitated by town marshall's requiring assistance); *State v. Carr,* 2 Conn.Cir.Ct. 247, 197 A.2d

663 (1963) (one-hour delay justifiable when awaiting arrival of additional officers to assist in apprehension of offenders); *United States v. Comi*, 336 F.2d 856 (4th Cir. 1964), *cert. denied*, 379 U.S. 992, 85 S.Ct. 704, 13 L.Ed.2d 611 (1965) (delay for a few moments permissible in order for officer to secure his badge and identification as well as protective assistance).

On the other hand, courts have ruled that delays are unreasonable when the officer engaged in an activity completely divorced from the arrest during the period between the commission of the misdemeanor and the arrest. For example, in *Smith v. State*, a deputy sheriff bought liquor from the defendant at the defendant's home. Rather than arrest the defendant at the time of the sale, the deputy left and transacted other duties, returning 30–40 minutes later to execute the warrantless arrest. The court ruled that the delay was unreasonable and that the arrest was illegal, stating:

> If, however, the officer witnesses the commission of an offense and does not arrest the offender, but departs on other business, or for other purposes, and afterwards returns, he cannot arrest the offender without a warrant; for then the reasons for allowing the arrest to be made without a warrant have disappeared.

228 Miss. at 480, 87 So.2d at 919; *see also, Jackson v. Superior Court*, 98 Cal.App.2d 183, 219 P.2d 879 (1950).

■ The present case falls somewhere in the middle of the continuum separating reasonable and unreasonable delays. Clearly, Lt. Casey's concerns were not motivated by the fear of the defendant's flight. Lt. Casey also did not fear for his own safety, or desire the assistance of other officers. At the same time, however, Lt. Casey's concerns were not completely disassociated from the arrest. He was apparently worried about what to do with the county vehicle. According to his testimony, from the time he received Officer Ramkowski's phone call to the time of the arrest, he never ceased occupation with this case. He did not turn his attention to other matters. Nevertheless, he could have ef-fectuated the arrest immediately. His concern about the county vehicle was mainly administrative or one of "convenience." Such a concern does not fall in the same category as fear of flight or need for police back-up.

■ Even if we could conclude that Casey's concern about the disposition of the county vehicle justified the lieutenant's failure to immediately arrest the defendant, we must still find that the concern merited a 2½–3 hour delay in executing the arrest. *Calanche, supra.* We cannot. This delay was patently unreasonable. Within this 2½–3 hour time frame, there were absolutely no exigencies, i.e., high speed chase or calls for assistance, which would justify the lieutenant's failure to obtain a warrant. As the U.S. Supreme Court stated in *Coolidge v. New Hampshire:*

> [The warrant requirement] is not an inconvenience to be somehow "weighed" against the claims of police efficiency. It is, or should be, an important working part of our machinery of government, operating as a matter of course to check the "well-intentioned but mistakenly overzealous executive officers" who are a part of any system of law enforcement.

403 U.S. 443, 481, 91 S.Ct. 2022, 2045, 29 L.Ed.2d 564 (1971).

For these reasons, we conclude that Lt. Casey delayed unreasonably in arresting the defendant. Because the arrest was unlawful, the fruits of the search which followed must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The order denying defendant's motion to suppress is reversed; the judgment and sentence is set aside; and the case is remanded for further proceedings consistent with this opinion.

*IT IS SO ORDERED.*

ALARID and GARCIA, JJ., concur.