724 P.2d 227

**Willie WARREN, Petitioner-Appellant,**

v.

**EMPLOYMENT SECURITY DEPARTMENT and Bernalillo County, Respondents-Appellees.**

**No. 16182.**

Supreme Court of New Mexico.

Sept. 3, 1986.

Christian Eaby & Associates, Larry Van Eaton, Albuquerque, for petitioner-appellant.

Paul Bardacke, Atty. Gen., Connie Reischman, Sp. Asst. Atty. Gen., Albuquerque, for respondents-appellees ESD.

Tito Chavez, Albuquerque, for appellee Bernalillo County.

## OPINION

FEDERICI, Justice.

Following his discharge from employment with Bernalillo County, Petitioner-Appellant Willie Warren (Warren) applied for unemployment compensation benefits with the Respondents-Appellees, Employment Security Department (Department). Warren was initially denied benefits. Following an administrative hearing, the Department continued the denial of benefits. Warren then sought review of the Department's decision in the district court, which upheld the decision of the Department. Warren now appeals to this Court. We affirm.

Warren, employed by Bernalillo County in the County Road Department, was arrested while at work on charges of drinking in public. He was discharged from his job and thereafter applied to the Department for unemployment compensation benefits pursuant to NMSA 1978, Sections 51–1–1 to –54 (Repl.Pamp.1983 and Cum.Supp. 1986). Following the initial Department determination of disqualification, he was granted a hearing before a hearing officer who issued a decision, finding that (1) claimant was arrested for drinking in public; (2) claimant was found to be in possession of illegal drugs and admitted as much to the employer; and (3) claimant's actions were a willful disregard of the employer's best interests. The denial of benefits was sustained on grounds of discharge for misconduct connected with the applicant's work. The Department's Board of Review affirmed the hearing officer's decision.

Warren, seeking judicial review, then filed a petition for writ of certiorari with the district court. After several hearings the district court entered findings and conclusions, and a judgment sustaining the Department's denial of Warren's unemployment compensation benefits.

General issues are presented on appeal by both Warren and the Department. We shall answer those issues which are dispositive. All other issues are deemed to be without merit.

*Issue I. Rules of Procedure.*

The Legislature has provided that the formal rules of procedure do not have to be applied in unemployment compensation administrative hearings. § 51–1–8(J). The Department, in Rule 518, has provided that proceedings shall be conducted informally and need not be governed by the common law or statutory rules as to the admissibility of evidence or by the technical rules of procedure.

*Issue II. Whole Record Review and Substantial Evidence.*

In the district court Warren argued that the Department's decision was not supported by substantial evidence because it was based entirely upon hearsay evidence.

This Court has recently adopted "whole record review" as the scope of review for unemployment appeal hearings. *Alonzo v. Employment Security Department,* 101 N.M. 770, 689 P.2d 286 (1984). Following that rule, we have examined the "whole record" before us and have determined that the decision of the Department to deny Warren his unemployment benefits is supported by substantial evidence.

The record reflects that Warren's supervisor, John Ramsey, testified at the hearing before the Department that when Warren was arrested at work, Mr. Ramsey was summoned back to the county yard. Upon arrival, he was shown the items taken from Warren's lunch box and advised by the arresting officers that they thought the items were illegal narcotics. He was advised by the police officers that they would get back to him after tests were run on the confiscated materials.

Mr. Ramsey testified that the following day, September 19, he met with Warren and advised him that if the items taken from his lunch box were illegal drugs, he would be fired. Mr. Ramsey's testimony is uncontroverted.

Mr. Ramsey testified that when he was told by the police that the confiscated items

taken from the lunch box were illegal drugs, he decided to terminate Warren. Accordingly, a meeting was held on September 20, 1984, between Warren, his union representative, and Mr. Ramsey, and Warren was given a written letter of termination.

Mr. Ramsey testified that during the meeting Warren admitted to him that the items confiscated from his lunch box were illegal drugs which he was keeping for someone else, and that he admitted smoking a marijuana cigarette in the park while in a work status on September 18, the day he was arrested. Mr. Ramsey's testimony concerning the admissions is controverted.

The record shows that at a conference called by the district court on the hearsay issue, no specific objection was made. The hearsay contained in Mr. Ramsey's testimony, although controverted in part by Warren, is evidence which would generally be acceptable when considered in the light of the whole record and particularly in view of the admission by Warren, a party opponent, that the items confiscated from his lunch box were illegal drugs and that he had smoked a marijuana cigarette on the day in question. *See* NMSA 1978, Evid.R. 801(d)(2)(A) and 803(24) (Repl.Pamp.1983). There is substantial evidence in the record to support the findings and conclusions of the Department and the district court.

*Issue III.   Effect of Suspension Instead of Discharge.*

This issue was first raised by Warren in the reply brief he submitted to the district court on July 12, 1985. At all times during the administrative adjudication of the claim, Warren maintained that he had been discharged on September 20, 1984, his last day of work. He continued to advance argument concerning his discharge in the brief in chief submitted to the district court. He now argues on appeal that Section 51-1-7(B) disallows benefits only if the employee had been "discharged," and that it therefore does not apply to him because he was merely "suspended," not "terminated."

Warren could have raised the issue of suspension while the matter was still before the Department. The evidentiary hearing before the Department's Appeal Tribunal was conducted on November 15, 1984, and the Tribunal's decision disqualifying him from benefits for having been discharged for misconduct connected with work was issued on November 29, 1984. Although the letter from the County's Personnel Board modifying the discharge to an indefinite suspension was issued on November 30, 1984, Warren did not raise this issue in his December 13, 1984 letter of appeal to the Board of Review, nor did he submit an additional statement in response to the Board of Review's December 20, 1984 notice of review on appeal.

■ Having failed to present the issue, he cannot now raise this new issue nor change his theory of the case for the first time on appeal to the district court. *Wolfley v. Real Estate Commission*, 100 N.M. 187, 668 P.2d 303 (1983); *Kaiser Steel Corp. v. Revenue Division, Taxation and Revenue Department*, 96 N.M. 117, 628 P.2d 687 (Ct.App.), *cert. denied*, 96 N.M. 116, 628 P.2d 686 (1981).

Moreover, Warren failed to request any proposed findings or conclusions concerning his contention that he is entitled to benefits as a matter of law because he was only suspended and not discharged, and consequently he has not preserved his claim of error below for review by this Court. *Nosker v. Western Farm Bureau Mutual Insurance Co.*, 81 N.M. 300, 466 P.2d 866 (1970).

■ In any event, a claimant subjected to a disciplinary suspension without pay is unemployed under the definition of "unemployment" because he is performing no services and no wages are payable to him. § 51-1-42(I). Thus, for the purposes of unemployment compensation, there is no distinction between "discharge for misconduct" and "suspension without pay for misconduct." Further, we note that the Department's long-standing interpretation is to include a disciplinary suspension without

pay under the discharge provision of the disqualification section of the statute. § 51–1–7(B).

### Issue IV. Department Estoppel.

 In *State v. Warren*, 103 N.M. 472, 709 P.2d 194 (Ct.App.1985), the Court of Appeals held that Warren's original arrest for public drinking was illegal and the fruits of the search following the arrest should therefore have been suppressed. By analogy, Warren argues that in a civil proceeding the Department should be estopped from asserting misconduct because that determination resulted from information obtained in an illegal arrest and search and seizure. His argument partially rests on his contention that public drinking is normally handled by a police citation rather than by custodial arrest. That is an immaterial distinction.

Although it is true here that the same act constituting grounds of misconduct on the job is also a criminal act, determination of misconduct in a benefits hearing does not depend upon proof admissible in a criminal trial. To hold otherwise would mean that the Department would be precluded from adjudicating unemployment benefit claims in cases where an employee's conduct might also arguably come within the Criminal Code merely because, for whatever reason, a criminal conviction had not or could not be obtained. Such a result, we believe, is not warranted. *See Rivera v. Catherwood*, 28 A.D.2d 1036, 283 N.Y.S.2d 676 (1967) (dismissal of criminal charges against a claimant arrested at work for selling narcotics and bookmaking at work did not foreclose Board from finding misconduct on the evidence adduced before it).

### Issue V. Public Policy.

With respect to Warren's argument concerning the public policy of the unemployment compensation law, we note that it is the declared public policy of the State that unemployment insurance benefits be provided "for the benefit of persons unemployed through no fault of their own." § 51–1–3. The negative words in the public policy provision of the statute, "through no fault of their own," must be construed with the other express provisions of the statute which define the concept of employee fault, and which provide for disqualification from benefits. § 51–1–7.

Warren correctly states the rule of construction that the statute be given a liberal interpretation; however, the rule of liberal construction must be applied with reasonableness and in a manner consistent with the basic legislative intent of granting unemployment compensation benefits only to those persons genuinely unemployed through no fault of their own. Under the facts of this case, we are convinced that the Department's decision is consistent with the public policy and the disqualification provisions of the statute.

The decision of the district court is affirmed.

IT IS SO ORDERED.

STOWERS and WALTERS, JJ., concur.